2004 ME 157

**Ronald STANLEY**

v.

**HANCOCK COUNTY COMMISSIONERS.**

Supreme Judicial Court of Maine.

Argued: March 10, 2004.
Decided: Dec. 23, 2004.

Arthur J. Greif (orally), Julie D. Farr, Christopher L. Dalton, Gilbert & Greif, P.A., Bangor, for plaintiff.

Linda D. McGill, Matthew Tarasevich (orally), Moon Moss McGill & Shapiro, P.A., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Ronald Stanley appeals from the entry of a summary judgment by the Superior Court (Hancock County, *Hjelm, J.*) in favor of the Hancock County Commissioners. Stanley's complaint alleges that he was terminated from his job as a maintenance worker for Hancock County in violation of the Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831–840 (1988 & Supp.2004), because he had complained to the County about its use of unlicensed workers to perform electrical work. The dispositive issue on appeal is whether Stanley adequately controverted statements in the Commissioners' statement of

material facts regarding their nondiscriminatory reasons for terminating his employment. We affirm the judgment because there are no genuine issues of material fact regarding the absence of a causal connection between Stanley's protected report to his employer and his termination. We also address the requirement in M.R. Civ. P. 56(h)(1), (2), and (3) that the facts set forth in supporting and opposing statements of material fact be "separate, short, and concise."

## I. BACKGROUND

[¶ 2] We consider the facts contained in the summary judgment record in the light most favorable to Stanley. Hancock County employed Ronald Stanley in its maintenance department from October 1994 to March 2001. In February 2000, the Commissioners hired Perley Urquhart as the County's facilities director. Urquhart is a licensed electrician and was authorized to contract electrical work to outside contractors. His duties included supervising Stanley.

[¶ 3] Stanley asserts that during his employment he was required to perform electrical work and that he had complained, first to the county clerk and then to Urquhart, that it was illegal and unsafe for him to perform electrical work because he was not a licensed electrician. In February 2001, Urquhart ordered Stanley to rewire floodlights. Stanley initially refused, but at Urquhart's insistence, he performed the work.

[¶ 4] In December 2000, Urquhart conducted a formal performance review of Stanley. In a memo addressed to the County Commissioners dated January 19, 2001, Urquhart described problems he had been having with Stanley and recommended that Stanley's employment be terminated. The memo stated that Stanley (1) failed to perform tasks assigned to him, including certain carpentry and painting jobs; (2) failed to comply with the County's personnel policies governing the use of the telephone for personal calls, breaks, tardiness, lunch breaks, and attendance; (3) failed to comply with directions and to complete work orders; and (4) lacked the knowledge or capacity to perform various tasks.

[¶ 5] The Commissioners conducted a hearing on Urquhart's recommendation in March 2001. Stanley was informed of Urquhart's recommendation to the Commissioners the morning of the hearing. At the hearing, Urquhart spoke first and stated his reasons for recommending that Stanley be terminated as outlined in the January 19 memorandum. Stanley spoke next and informed the Commissioners that he had recently been required to perform electrical work for the County (rewiring the floodlights) even though he was not licensed to do the work. He also showed the Commissioners several work orders for other electrical projects that, he claimed, Urquhart expected him to complete.[1] After the hearing, the Commissioners voted 3–0 to accept Urquhart's recommendation that Stanley's employment be terminated.

[¶ 6] Stanley filed a discrimination complaint with the Maine Human Rights Commission, alleging that his termination had been in retaliation for his complaints about unsafe and illegal employment practices. *See* 26 M.R.S.A. § 834–A (1988) (authorizing an employee who has complied with

---

1. The work orders were not specifically directed to Stanley. The Commissioners contend that Urquhart told them at the hearing that he had mistakenly thought that Stanley could do the floodlight job under his license. Stanley disagrees, contending that Urquhart erroneously told the Commissioners at the hearing that Stanley was authorized to perform the floodlight job under his license.

provisions of the Whistleblowers' Protection Act to bring a complaint before the Maine Human Rights Commission). The Human Rights Commission gave Stanley a right-to-sue letter, and this action followed. *See* 5 M.R.S.A. § 4612(6) (2002).

[¶ 7] After the completion of discovery, the Commissioners filed a motion for a summary judgment. The Commissioners' motion was supported by a statement of material facts pursuant to M.R. Civ. P. 56(h)(1) containing 191 separate facts, several of which repeated the same facts in various forms two or more times. This apparently occurred because the statement was organized to correspond roughly to the three affidavits and Stanley's deposition, which were cited in support of the 191 facts.

[¶ 8] Stanley responded with an opposing statement of facts pursuant to M.R. Civ. P. 56(h)(2) that (1) admitted many of the Commissioners' points; (2) disputed or qualified many of the Commissioners' points with appropriate affirmative statements and record references; and (3) conceded many of the Commissioners' points with the following statement and case citation:

> Plaintiff admits that this is what is contained in [the named person's] affidavit [cited in support of the fact],[2] but notes that, to the extent this statement reflects the affiant's state of mind or opinion, the Judge is free to completely disregard this self-serving statement, as it is not from a disinterested witness. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, [150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105] (2000) (citations omitted).

[¶ 9] Separate from his response to the Commissioners, Stanley filed a statement of additional facts pursuant to M.R. Civ. P. 56(h)(2). This statement asserted forty-nine additional facts supported by record references. Among other things, these additional facts alleged that Stanley discussed "the issue of [Stanley] performing electrical work without a license" with county officials as early as October 1997, and that "Urquhart told Stanley shortly after he started with the County that the Commissioners had told him to find a reason to fire Stanley." The Commissioners filed a reply statement to Stanley's statement pursuant to M.R. Civ. P. 56(h)(3) that largely denied Stanley's proffered facts regarding the timing and substance of many communications concerning electrical work between Stanley, Urquhart, and the Commissioners.

[¶ 10] The Superior Court granted the Commissioners' motion for a summary judgment. It determined that Stanley failed to controvert the Commissioners' assertion that his complaints about performing electrical work did not contribute to the Commissioners' decision to terminate his employment. Stanley appeals from this decision.

## II. DISCUSSION

### A. Whistleblowers' Protection Act

[¶ 11] "To prevail on a claim of unlawful retaliation pursuant to the [Whistleblowers' Protection Act], an employee must show (1) that she engaged in activity protected by the WPA, (2) that she experienced an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse employment action." *DiCentes v.*

---

**2.** The individual affiant was named in each such statement. Otherwise, the statements were identical.

*Michaud,* 1998 ME 227, ¶ 14, 719 A.2d 509, 514; *see also* 26 M.R.S.A. § 833(1), (2) (1988 & Supp. 2004).

[¶ 12] We evaluate WPA claims with the "shifting burdens" analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *DiCentes,* 1998 ME 227, ¶ 14, 719 A.2d at 514. Under that formula, after the WPA claimant establishes a prima facie case, the defendant assumes the burden of producing evidence that there was a legitimate, nondiscriminatory reason for the adverse employment action. *Maine Human Rights Comm'n v. City of Auburn,* 408 A.2d 1253, 1262 (Me. 1979). If the defendant produces evidence of a legitimate, nondiscriminatory reason for the employment action, the employee has the burden to show that the reason offered by the defendant was pretextual; that is, "that there was, in fact, a causal connection between the protected activity and the adverse employment action." *DiCentes,* 1998 ME 227, ¶ 16, 719 A.2d at 515. In the summary judgment context, a plaintiff can meet that final burden and survive a defense motion for a summary judgment by establishing a factual dispute as to whether a causal connection exists between the report protected by the WPA and the adverse employment action.

B. Summary Judgment Analysis

[¶ 13] Entry of a summary judgment is appropriate only if the portions of the evidentiary record "referred to in the statements [of material facts] show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c); *see also Botka v. S.C. Noyes & Co.,* 2003 ME 128, ¶ 18, 834 A.2d 947, 952–53. A party's opposing statement of material facts " 'must explicitly admit, deny, or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation.' " *Doyle v. Dep't of Human Servs.,* 2003 ME 61, ¶ 10, 824 A.2d 48, 52–53 (quoting *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 6 n. 5, 770 A.2d 653, 655); *see also* M.R. Civ. P. 56(h)(2). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4).

> The existence of a dispute of material facts and entry of summary judgment are questions of law which we review de novo, considering the evidence in the light most favorable to the party against whom judgment has been entered, to decide whether the parties' statements of material facts and the referenced record evidence reveal a genuine issue of material fact, and whether the moving party was entitled to judgment as a matter of law.

*Botka,* 2003 ME 128, ¶ 18, 834 A.2d at 952–53.

[¶ 14] We turn to consider the summary judgment record in this case as it pertains to (1) Stanley's prima facie case of employment discrimination; (2) the Commissioners' nondiscriminatory reasons for Stanley's termination; and (3) proof of motive in employment discrimination cases.

1. Prima Facie Case of Employment Discrimination

[¶ 15] The Commissioners concede that Stanley required an electrician's license at least with regard to the floodlight project. They also concede that Stanley told Urquhart that he was not authorized to perform that work. It is also undisputed that Stanley was terminated from employment a short time after he made the WPA-protected report.

[¶ 16] These facts establish a prima facie case for discrimination pursuant to 26 M.R.S.A. § 833(1)(A), (B), or (D). *See DiCentes*, 1998 ME 227, ¶ 16, 719 A.2d at 514–15 ("Proof of conduct protected by the WPA ... followed in close proximity by an adverse employment action, gives rise to an inference that a causal connection is established ....").  Thus, under the *McDonnell Douglas* burden-shifting framework, the Commissioners were obliged to produce evidence of a legitimate, nondiscriminatory reason for terminating Stanley's employment. *DiCentes*, 1998 ME 227, ¶ 16, 719 A.2d at 515.  Accordingly, we examine the undisputed facts that establish a nondiscriminatory reason for Stanley's termination, and the absence of a causal connection between Stanley's termination and his complaints regarding the electrical work.

## 2. Nondiscriminatory Reasons for Adverse Employment Action

■ [¶ 17] The Commissioners asserted in paragraphs 38, 66, 99, and 179 of their statement of material facts that they terminated Stanley's employment for the nondiscriminatory reasons that he abused break and lunch time policies, came in late and left early without permission, poorly performed his work, and was rude and argumentative.  The Commissioners also asserted in paragraphs 13, 49, 53, and 180 of their statement of material facts that Stanley's complaints about electrical work were irrelevant to their decision.

[¶ 18] Stanley responded to paragraphs 38, 49, 66, 99, 179, and 180, as follows:
Plaintiff admits that this is what is contained in [the] affidavit, but notes that, to the extent this statement reflects the

affiant's state of mind or opinion, the Judge is free to completely disregard this self-serving statement, as it is not from a disinterested witness. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, [150–51, 120 S.Ct. 2097] (2000) (citations omitted).

Stanley's responses failed in several respects to dispute the nondiscriminatory reasons asserted by the Commissioners for his termination.  First, the responses fail to "admit, deny, or qualify the facts." M.R. Civ. P. 56(h)(2).  Second, by not expressly admitting the facts, Stanley was required, but failed, to "support each denial or qualification by a record citation." *Id.* Moreover, by failing to controvert properly the Commissioners' asserted facts, Stanley admitted those facts.  M.R. Civ. P. 56(h)(4).[3]

[¶ 19] Stanley cannot avoid admitting a fact that he failed to controvert properly by inviting the court to disbelieve a sworn affidavit because it contains "self-serving statements" by a witness who is not "disinterested."  The Rules permit parties to rely on the affidavits of interested witnesses, including themselves, to establish or dispute a material fact.  A cornerstone of the rationale for having a summary judgment process is that a trial is not warranted if a party cannot identify admissible evidence that establishes an actual factual dispute.  If we were to interpret the Rule as Stanley suggests, Rule 56 would be rendered a nullity.  As applied here, Stanley's approach would compel us to disregard the facts he asserted in his additional statement of material facts because the statement is based on his own affidavit and deposition, both of which can be characterized as self-serving statements

---

**3.** Amendments to the Civil Rules effective January 1, 2004, added the additional requirement that a party's opposing statement of material facts must begin each statement "with the designation 'Admitted,' 'Denied,' or 'Qualified' (and, in the case of an admission, shall end with such designation)." M.R. Civ. P. 56(h)(2).

by a witness who is not disinterested. We reject this approach.

[¶ 20] Stanley's reliance on the *Reeves* opinion in his responses is misplaced. *Reeves* addressed an age discrimination claim in which the employer had rebutted the employee's prima facie case of discrimination at trial with the legitimate, nondiscriminatory explanation that the employee was terminated for "shoddy record keeping." *Reeves*, 530 U.S. at 142–43, 120 S.Ct. 2097 (quotation marks omitted). In response, the employee introduced evidence that he had properly maintained the records in question, *id.* at 144–45, 120 S.Ct. 2097, thereby creating a jury issue as to the falsity of the employer's explanation. *Id.* at 151, 120 S.Ct. 2097. Similarly, in *Desert Palace, Inc. v. Costa*, the United States Supreme Court held that an employee is not required to "present direct evidence of discrimination in order to obtain a mixed-motive instruction under Title VII of the Civil Rights Act of 1964," 539 U.S. 90, 92, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), and may instead rely on circumstantial evidence, including circumstantial evidence "that a defendant's explanation for an employment practice is 'unworthy of credence.'" *Id.* at 100, 123 S.Ct. 2148 (quoting *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097).

[¶ 21] The principles enunciated in *Reeves* and *Desert Palace*, with which we agree, do not assist Stanley because Stanley's responses failed to create a factual dispute regarding the Commissioners' nondiscriminatory explanation for their deci-sion to terminate his employment. Stanley could have generated a factual dispute by simply denying the Commissioners' assertions and, as required by Rule 56(h)(2), supporting his denials with record citations to circumstantial evidence that the Commissioners' nondiscriminatory explanation was unworthy of credence. Contrary to the view expressed by our dissenting colleagues, the principles addressed in *Reeves* and *Desert Palace* are entirely consistent with our conclusion regarding Stanley's responses and with the established requirements of summary judgment practice: To create a jury question as to whether an employer's nondiscriminatory explanation is believable, the employee must deny the material facts that establish the nondiscriminatory explanation and support the denials with record citations to admissible evidence. That did not occur here.

[¶ 22] Stanley also failed to effectively controvert the factual assertions made in paragraphs 13 and 53 of the Commissioners' statement of material facts, but for reasons different than those applicable to paragraphs 38, 49, 66, 99, 179, and 180. In each instance, Stanley expressly disputed the Commissioners' assertion that they thought the electrical work issue was irrelevant. Stanley supported his responses inadequately, however, with record citations that established only that he raised the electrical work issue at the hearing, not that the Commissioners treated the issue as relevant to their decision to terminate his employment.[4]

---

4. The Commissioners' assertions and Stanley's responses are as follows:

> 13. The Commissioners thought [the report regarding electrical work] was irrelevant to the issues brought up by Urquhart in his January 19, 2001 memo, and voted 3–0 to terminate Stanley's County employment. [County Clerk] Bickford Aff. ¶ 4.

> *13. Disputed. The Commissioners considered Stanley's complaint regarding being requested to perform electrical work, but were satisfied by Mr. Urquhart's erroneous statement that Stanley could work under his license. See Stanley aff. ¶¶ 21, 22.*

> 53. The issue of electrical work was not a consideration in the Commissioners' deci-

[¶ 23] Stanley's responses to the Commissioners' statement of material facts established that the Commissioners had legitimate reasons for terminating his employment. Accordingly, the Commissioners established a nondiscriminatory reason for the adverse employment action. This shifts the burden of persuasion to Stanley to show that the nondiscriminatory reasons offered by the Commissioners are pretextual. Stanley cannot meet this burden because his responses to the Commissioners' statement of material facts also failed to controvert that what he believed to be the real reason for his termination—his complaints regarding electrical-related job assignments—was irrelevant to the Commissioners' decision.[5] Nowhere in his opposing statement of material facts did Stanley assert that his poor work performance reports, relied on by the Commissioners, were untrue, or that even if true, were not the cause for his termination.

[¶ 24] Under the *McDonnell Douglas* burden-shifting framework, a plaintiff can meet her or his final burden and survive a defense motion for a summary judgment by establishing a factual dispute as to whether a causal connection exists between the report protected by the WPA and the adverse employment action. Stanley failed to do this because pursuant to Rule 56(h)(4) he admitted that he was terminated for his poor work performance and that his complaints regarding the electrical work were not the cause of the Commissioners' decision. The fact that there is a factual dispute about the extent to which he complained about having to perform electrical work even before Urquhart's 2001 memo, or whether Urquhart told him that the Commissioners had asked Urquhart to find a reason for firing him, does not satisfy his burden of demonstrating the required causal connection between his "whistleblowing" and his termination.[6] *See Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842, 845 (stating that a motion for a summary

---

sion, as it had nothing to do with Urquhart's complaints and recommendations, and Stanley had shown nothing to the Commissioners to show that it had anything to do with the January 19, 2001 recommendation. Brown Aff. ¶ 8.

53. *Disputed. Plaintiff had provided the Commissioners with five work orders which reflected that electrical work needed to be done and Stanley stated to the Commissioners that he could not legally do the electrical work. See Stanley depo. pg. 97 lines 5–9.* Stanley's responses are insufficient because his assertions of facts associated with his complaints and his characterization of them as having been *considered* by the Commissioners fail to controvert the Commissioners' statement that the complaints were *irrelevant* to the decision to terminate.

5. Stanley asserts for the first time on appeal that the affidavits relied on by the Commissioners were deficient because they contain inadmissible hearsay. *See* M.R. Civ. P. 56(e). The failure of a summary judgment respondent to object to evidentiary matters at the

trial level effectuates a procedural waiver of those objections. *See Peoples Heritage Sav. Bank v. Pease*, 2002 ME 82, ¶ 25, 797 A.2d 1270, 1277 ("If a party fails to object to an improper affidavit as unsupported by the affiant's personal knowledge, the issue is not preserved for appellate review.").

6. We note parenthetically that the Commissioners did not contend that Stanley failed to voice any complaints about electrical work prior to 2001. Rather, they asserted that at the hearing in March 2001, "Stanley did not address any electrical work other than being asked to fix some flood[ ]lights in late February 2001. Bickford Aff. ¶ 4." Stanley disputed this assertion by explaining that he had "[o]n many occasions ... addressed electrical work other than being asked to fix some flood lights in late February, 2001." Accordingly, Stanley's response and record citations were unresponsive to the Commissioners' assertion that at the hearing, the only electrical work Stanley addressed pertained to February 2001, and therefore the Commissioners' assertion was effectively admitted.

judgment is properly granted "[w]here a plaintiff will have the burden of proof on an essential issue at trial, and it is clear that the defendant would be entitled to a judgment as a matter of law at trial if the plaintiff presented nothing more than was before the court at the hearing on the motion for a summary judgment.").

### 3. Proof of Motive

[¶ 25] Stanley contends that employment discrimination cases are unsuitable for summary judgments because any statements by a defendant related to motive or intent should be subjected to a credibility determination at trial. Although at least one court has suggested caution in the use of summary judgment practice to decide issues of motive or intent in employment discrimination cases, *see Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 40 (1st Cir.2003), the presence of the issue of motivation or intent does not relieve the plaintiff of her or his burden of producing evidence sufficient to create a question of fact on that issue. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Chapman v. AI Transp.*, 229 F.3d 1012, 1024–26 (11th Cir.2000).

[¶ 26] Regardless of whether extra caution is warranted on the issue of motivation when applying the summary judgment framework in employment discrimination cases, the summary judgment record in this case establishes that there is no genuine dispute of material fact central to one of the three required elements of a WPA claim: "that a causal connection existed between the protected activity and the adverse employment action." *DiCentes*, 1998 ME 227, ¶ 14, 719 A.2d at 514. Stanley conceded that the adverse employment action was motivated by legitimate reasons that are unrelated to his complaints regarding electrical work. He therefore failed to establish a genuine dispute of material fact as to whether the reasons cited by the Commissioners to justify his termination were pretextual. *See id.* ¶ 17, 719 A.2d at 515.

### C. Rule 56(h)(1)'s Requirement That Statements of Material Fact be "Separate, Short and Concise"

[¶ 27] Rule 56(h)(1) requires that "[a] motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Although the question of whether the Commissioners' 191–paragraph statement of material facts comports with this requirement was not raised before the Superior Court or before us, we take this opportunity to address the Rule's brevity requirement because of its importance to the management of cases in the trial courts.

[¶ 28] The filing of unnecessarily long or repetitive statements of material facts needlessly complicates the summary judgment process. If a statement of a particular fact is supported by several record citations, the fact should be stated once with a reference to each of the several record citations that support the fact. In addition, statements of material facts should be organized in a logical order to present in a meaningful fashion the "story" revealed by the material facts. For example, parties may organize facts, in whole or in part, (1) in order of chronology; (2) to correlate with the elements of the cause or causes of action; or (3) as was possible here, to correspond to the shifting burdens of proof imposed by settled law. We discourage organizing statements of material facts by tracking the averments made in several affidavits submitted in support of the statements, where such organization results in the same fact being repeated multiple times.

[¶ 29] If a party submits an unnecessarily long, repetitive, or otherwise convoluted statement of material facts that fails to achieve the Rule's requirement of a "separate, short, and concise" statement, the court has the discretion to disregard the statement and deny the motion for summary judgment solely on that basis.

## D. Conclusion

[¶ 30] We affirm the summary judgment because, as the Superior Court properly concluded, "the record on summary judgment establishes that any prior reports made by [Stanley] regarding the lawfulness of policies and practices in the maintenance of county buildings were not a cause of the [Commissioners'] decision to terminate his employment."

The entry is:

Judgment affirmed.

SAUFLEY, C.J., concurs and files an opinion joined by CLIFFORD, J.

ALEXANDER, J., dissents and files an opinion joined by DANA and CALKINS, JJ.

SAUFLEY, C.J., with whom CLIFFORD, J., joins, concurring.

[¶ 31] I join the majority opinion of the Court in both analysis and conclusion and write separately in concurrence to address the focal point of both the majority and dissenting opinions.

[¶ 32] Simply put, it is the responsibility of the parties to admit, deny, or qualify the facts set forth in a statement of material facts by reference to each numbered paragraph, and to provide appropriate record citations for each denial or qualification. In this case, Stanley did not do so. The dissent points to the morass created by both parties' multiple and, at times, lengthy statements of fact and determines

that Stanley should not be held to the requirement of the rule. The trial court, in a thorough and well-reasoned review, and the majority of this Court say that he should.

[¶ 33] The summary judgment rules are straightforward and intended to allow an immediate identification of legitimate factual disputes. It is the parties, not the judge, who have the responsibility to respond to their opponents' statements of fact directly, in an organized manner, and with record support. This allocation of responsibility is reasonable and, contrary to the conclusion of the dissent, does not signal a return to common law pleading or the end of jury trials.

[¶ 34] Thus, I concur in the opinion of the Court.

---

ALEXANDER, J., with whom DANA and CALKINS, JJ., join, dissenting.

[¶ 35] I respectfully dissent. The Court today holds that a disputed issue of intent or motivation may be decided by a summary judgment as a question of law. It does so by ignoring the developing law that, in mixed motives discrimination cases, a plaintiff may rely on circumstantial evidence to allow a fact-finder to disbelieve a defendant's proffered nondiscriminatory explanation for an employment action and leave the disputed issue of motivation for decision by the fact-finder. The court reaches this result by rigorously applying the rules of summary judgment practice against the plaintiff in a case where both parties failed to follow proper summary judgment practice. By its action the Court rewards a flagrant violation of our rules and promotes focus on technicality reminiscent of the rigors of common law pleading, leading to trial by paper canceling the right to trial by jury.

[¶ 36] In this case, one subjective issue is presented for determination—whether there is a dispute as to the material fact that Stanley's termination was motivated in whole or in part by his complaints about violations of the electrical code. Addressing factual determinations of intent or motivation issues, we have held that, "There is rarely, if ever, direct evidence of a defendant's mental state .... Of necessity, the mental state must be proven by circumstantial evidence." *State v. McEachern*, 431 A.2d 39, 42 (Me.1981).[7] A factual determination of a motivation issue is heavily dependent on inferences, circumstantial evidence, and credibility determinations that do not easily allow resolution by summary judgment. The United States Supreme Court has confirmed that use of circumstantial evidence is appropriate in determining whether a plaintiff's protected class or status may have been a motivating factor for an adverse employment action that is at issue in a civil rights case. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–102, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).

[¶ 37] The Court's approach, treating a question of motivation or intent in a civil rights case as an issue of law, resolvable by summary judgment, joins some other respected appellate and trial courts.[8] However, in its opinion the Court ignores the observation in *Desert Palace* that, in a mixed motives case, "evidence that a defendant's explanation for an employment practice is 'unworthy of credence' is 'one form of *circumstantial evidence*' that is probative of intentional discrimination." 539 U.S. at 100, 123 S.Ct. 2148 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (emphasis in original)). Other recent precedent also recognizes that, in employment discrimination cases, summary judgment may be avoided by reliance on circumstantial evidence that a fact-finder could disbelieve a defendant's proffered nondiscriminatory explanation for an employment action, and that such determinations are best left to a jury. *See Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31 (1st Cir.2003), in which the First Circuit denied a motion for judgment as a matter of law in an employment discrimination case, stating that "[t]his court has consistently held that determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury, as proof is generally

---

7. *See also Maine Jury Instruction Manual* § 6–39 at 6–53 (4th ed. 2004) ("Intent or mental state ordinarily cannot be proved directly, because there is rarely direct evidence of the operations of the human mind. But you may infer a person's intent or state of mind from the surrounding circumstances.").

8. *See* Ann C. McGinley, *Credulous Courts and the Tortured Trilogy: The Improper Use of Summary Judgment in Title VII and ADEA Cases*, 34 B.C. L. REV. 203, 208 (1993). *See also Lewis v. City of Boston*, 321 F.3d 207, 211–13, 220 (1st Cir.2003) (holding temporal proximity between employee's public criticism of school district and the elimination of his position insufficient to overcome evidence of neutral reasons for the position elimination that included budget-required reductions in force); *Jackson v. Ill. Medi–Car, Inc.*, 300

F.3d 760 (7th Cir.2002) (affirming holding that evidence presented by plaintiff could not support conclusion that defendant had acted with deliberate indifference); *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533–35 (7th Cir.1993) (holding that plaintiff failed to establish hostile work environment for purposes of sexual harassment claim); *Moore v. Nutrasweet Co.*, 836 F.Supp. 1387, 1389–1404 (N.D.Ill.1993) (finding that employer had legitimate, nondiscriminatory reason for excluding plaintiff from bonus program and terminating plaintiff in action alleging race and sex discrimination); *Bernard v. Bethlehem Steel Corp.*, 837 F.Supp. 215 (E.D.Tex.1993) (holding that plaintiff failed to show that employer's reason for terminating him was pretextual).

based on inferences that must be drawn, rather than on the proverbial 'smoking gun.'" *Id.* at 40 [9] (quoting *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 34 (1st Cir.1990)). *See also Ricci v. Applebee's Northeast, Inc.*, 297 F.Supp.2d 311 (D.Me.2003), *recons. granted*, 301 F.Supp.2d 51 (D.Me.2004) (granting motion for reconsideration and clarification, but denying defendant's substantive claims). In the *Ricci* case, after finding that Ricci had established the prima facie case and that Applebee's had articulated a legitimate nondiscriminatory reason for the adverse employment action, *id.* at 318–25, the District Court analyzed whether Ricci provided sufficient proof of pretext to survive summary judgment, *id.* at 325–26. In so doing, the court did not look at whether Ricci properly responded to the specific statements of material fact that established the legitimate reasons for Applebee's actions. *Id.* Instead, the court looked at the record as a whole to determine if it contained sufficient evidence of pretext. *Id.* at 326. The Court stated: "[I]t suffices to say that the evidence taken as a whole, if believed, would allow a reasonable fact[-]finder to conclude that Applebee's acted with discriminatory animus against Ms. Ricci in its action...." *Id.* at 326.

[¶ 38] Recently, liberal use of summary judgment practice to resolve factual disputes regarding motivation or intent—almost always in favor of a defendant—has been sharply criticized as violative of both the basic purpose of the summary judgment rule and the essential right to a trial by jury guaranteed by our state and federal constitutions [10] and our civil rules.[11] Arthur R. Miller, one of the preeminent civil practice scholars of our time, observes that: "Overly enthusiastic use of summary judgment means that trialworthy cases will be terminated pretrial on motion papers, possibly compromising the litigants' constitutional rights to a day in court and jury trial." Arthur R. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Cliches Eroding Our Day In Court and Jury Trial Commitments?* 78 N.Y.U. L. REV. 982, 1071 (2003).

[¶ 39] Nearly sixty years ago, Second Circuit Judge Jerome N. Frank, deciding against summary judgment in a case involving a highly implausible copyright infringement claim, stated that a plaintiff "must not be deprived of the invaluable privilege of cross-examining the defendant—the 'crucial test of credibility'—in the presence of the jury." *Arnstein v. Porter*, 154 F.2d 464, 469–70 (2d Cir.1946). *Accord Subin v. Goldsmith*, 224 F.2d 753, 758–59 (2d Cir.1955). This was the conventional wisdom of summary judgment practice on credibility and subjective judgment issues in the years immediately following the 1938 adoption of the Federal Rules of Civil Procedure.

[¶ 40] The 1980s and 1990s saw a newer standard of judicial relativism adopted by some courts that would grant summary judgment in cases viewed as having a very limited chance of success despite the existence of some disputes as to material facts. *See supra* note 8. Thus, the First Circuit

---

9. As indicated in *Lewis,* however, the First Circuit had, earlier in 2003, allowed summary judgment in an employment discrimination case where intent was at issue. *Lewis,* 321 F.3d at 220.

10. *Cf.* U.S. CONST. amend. VII; ME. CONST. art. I. § 6.

11. FED. R. CIV. P. 38(a); M.R. CIV. P. 38(a). M.R. Civ. P. 38(a) states: "The right of trial by jury as declared by the Constitution of the State of Maine or as given by a statute shall be preserved to the parties inviolate."

observed: "Summary judgment is a device that 'has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways.'" *Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir.1999) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)). Writing in 1990, Judge Richard A. Posner stated that scheduling and docket pressure "makes appellate courts reluctant to reverse a grant of summary judgment merely because a rational fact-finder *could* return a verdict for the non-moving party, if such a verdict is highly unlikely as a practical matter because the plaintiff's case . . . is marginal." *Shager v. Upjohn Co.*, 913 F.2d 398, 403 (7th Cir. 1990) (emphasis in original).

[¶ 41] The Court's opinion today effectively adopts this relativist approach to determination of fact disputes in summary judgment cases. In so doing, it changes Maine law.

[¶ 42] We have continued to review statements of material facts and referenced record evidence to determine if that record reveals a genuine issue of material fact. *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380. A genuine issue of material fact remains any time the evidence "requires a fact[-]finder to choose between competing versions of the truth at trial." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040, 1044. Any ambiguities must be resolved in favor of the nonprevailing party, *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685, and, up until now, summary judgment has been precluded if there remain any disputes as to material facts.

[¶ 43] While the Court moves toward a relativist standard for summary judgment review, current legal thought may be moving in the other direction. Justice Thomas's opinion in *Desert Palace* emphasizes the importance of leaving questions of motivation, almost always a circumstantial evidence issue, to the fact-finder. Professor Miller's article, *The Pretrial Rush to Judgment*, makes a compelling case for respecting the right to jury trial and limiting summary judgment to cases where there are no disputes as to material facts. In a 2002 opinion, *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir.2002), Judge Posner seemed to be moving away from his prior relativist position, writing that in summary judgment practice, courts must not weigh conflicting evidence, *id.* at 655–56, and that plaintiffs' presentation of "some evidence," *id.* at 660, on a material issue was enough to avoid summary judgment, even if a competing hypothesis may seem more plausible, *id.* at 662, 666. Miller notes that Posner's view "projects sensitivity toward the need to differentiate fact and law, what is determinable on a pretrial motion and what should be left for trial, and the respective roles of judges and juries." Miller, *The Pretrial Rush to Judgment*, 78 N.Y.U. L. Rev. at 1093.

[¶ 44] Turning to the record of the present case, the Court and the parties agree that Stanley established a prima facie case for illegal discrimination. The Court then concludes that, on the motivation issue, Stanley failed to adequately rebut the County Commissioners' proffered nondiscriminatory reasons for his termination. The Court's conclusion is heavily dependent on Stanley's failure to comply with the rules governing summary judgment practice in his responses to the County Commissioners' lengthy statement of material facts.

[¶ 45] Because summary judgment is intended to promote prompt and simplified resolution of cases, entry of a summary judgment is appropriate only if the portions of the evidentiary record "referred to

in the statements [of material fact] show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c); *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 18, 834 A.2d 947, 952–53. Consistent with the objective that summary judgment be a simple and efficient process, Rule 56 requires that the moving party's statement of material facts must be "separate, short, and concise." M.R. Civ. P. 56(h)(1). The same is required of any nonmoving party's opposing statement, M.R. Civ. P. 56(h)(2), and any reply statement, M.R. Civ. P. 56(h)(3).

[¶ 46] A party's opposing statement of material facts "'must explicitly admit, deny, or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation.'" *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 10, 824 A.2d 48, 52 (quoting *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n. 5, 770 A.2d 653, 655); M.R. Civ. P. 56(h)(2). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4).

[¶ 47] The summary judgment practices employed by both parties in this case deviated considerably from these requirements. As noted above, only one narrow issue is in dispute: whether Stanley's WPA-protected complaints were a motivation for his discharge. The statement of material facts submitted by the Commissioners in support of their motion was a flagrant violation of M.R. Civ. P. 56(h)(1). Instead of addressing the one narrow issue in a "separate, short, and concise" statement, the Commissioners filed a disorganized and repetitive statement listing 191 separate points, with similar or identical

statements being repeated often two and, occasionally, three times.

[¶ 48] In determining how to respond to this seriously disorganized, extensive, and repetitive statement in violation of Rule 56(h)(1), Stanley faced a dilemma. He might have objected and moved to strike some or all of the Commissioners' statement of material facts as violative of M.R. Civ. P. 56(h)(1), requiring that statements be separate, short, and concise. Such a tactic would have led to a collateral proceeding, generating more expense and paperwork, probably without any real prospect of a result that might significantly benefit any move toward resolution of the litigation. Alternatively, Stanley could have undertaken the considerable effort and expense required to respond individually, with appropriate record citations, to each of the 191 statements of material fact. Such a response would have generated a large amount of work for Stanley and risked violating the rule that his opposition to the statement of material facts must be "separate, short, and concise." M.R. Civ. P. 56(h)(2). Instead, Stanley opted for a third alternative. He responded by admitting, denying, or qualifying with appropriate record citations, as the rules require, the specific factual claims made in the Commissioners' statement of material facts. For those statements of material fact that include subjective or judgmental claims or statements regarding the state of mind of interested parties, Stanley responded with the statement noting that, to the extent that the statement reflected a comment about state of mind or opinion of an individual, the court was free to disregard it.

[¶ 49] In addition to his response to the County Commissioners' statement of material facts, and as authorized by M.R. Civ. P. 56(h)(2), Stanley provided his own separate statement of additional facts that was

generally compliant with the rules, being separate, short, concise, adequately organized, and nonrepetitive. By this approach, Stanley indicated his acceptance or disagreement with precise facts stated in the Commissioners' statements, and he indicated nonacceptance of the subjective, judgmental, or state of mind opinions indicated in the Commissioners' statements. He then, separately, laid out the facts in support of his claim rather than have his opposition and points he wished to make lost in the many responses to the disorganized and repetitive statement by the Commissioners.

[¶ 50] Had the Commissioners filed a proper, short, and concise statement of material facts, I would agree with the Court that Stanley's responses calling on the Court to disregard the subjective, judgmental, or state of mind opinions were inadequate and should cause those statements to be deemed admitted pursuant to M.R. Civ. P. 56(h)(4) because they were not properly controverted. However, I do not concur that Stanley's responses should be deemed to admit the subjective, judgmental, or opinion statements within the excessive statement of material facts submitted by the Commissioners in this case. Stanley's response made his opposition to such statements evident. His response recognized that a fact-finder may disbelieve such statements even if uncontradicted, *In re Heather G.*, 2002 ME 151, ¶ 9, 805 A.2d 249, 251 and, perhaps, most importantly, Stanley then put forward a properly organized statement of material facts supporting his claim. Both parties violated the rules for proper summary judgment practice in this case. One party should not profit from this violation while the other is penalized.

[¶ 51] The key elements of Stanley's additional statement of facts were as follows:

8. Commencing in October 1997, Bickford and the Plaintiff met daily and discussed various issues. Among the issues discussed was the issue of Plaintiff performing electrical work without a license. *See* Bickford dep. Pg. 18 lines 2–24.

9. Bickford recalls specific conversations that he had with Mr. Stanley after Mr. Urquart was hired by the County in which the Plaintiff expressed to Mr. Bickford his concern that he was directed to do certain electrical work. *See* Bickford dep. Pg. 19 lines 17–25, pg. 21 lines 1–17.

30. Stanley had made oral complaints of persons doing electrical jobs who were not licensed to perform such tasks and complains that he could not perform certain electrical jobs as he was not a licensed electrician. *See* Stanley dep. Pg. 97, lines 20–25.

33. Urquart told Stanley shortly after he started with the County that the Commissioners had told him to find a reason to fire Stanley. *See* Stanley dep. Pg. 125, lines 1–7.

36. There were a number of occasions in which Stanley complained to the Commissioners, through the County Clerk, that he was being asked or expected to perform electrical work which required an electrician's license. *See* Stanley aff. ¶ 4.

38. Prior to Perley Urquart being hired, Stanley would meet with the County Clerk on an almost daily basis to discuss the facilities and concerns Stanley may have. Stanley expressed frequently that he was being asked to perform electrical work which required an electrician's license. *See* Stanley aff. ¶ 6.

39. Stanley still continued to meet with the County Clerk but on a somewhat less frequent basis after Mr. Urquart

was hired by the County. He let the clerk know that he was being asked and expected to perform electrical wiring tasks which required an electrician's license. *See* Stanley aff. ¶ 7.

[¶ 52] The court concludes that summary judgment was appropriate because Stanley failed to generate a dispute as to material fact as to whether there was a causal connection between his complaint that unlicensed individuals were being asked to perform electrical work and his termination. In this analysis, the Court is engaging in the process, criticized by Miller, of evaluating the significance of Stanley's evidence and its likelihood of success before a jury. Stanley's additional statements of fact, quoted above, establish at least a dispute as to material fact as to the timing of the adverse employment reviews in relation to Stanley's complaints regarding unlicensed electrical work and whether there was a causal connection between those complaints and the motivation for his dismissal.

[¶ 53] Stanley asserts that his new supervisor told him that the County Commissioners wanted to fire him, and had directed Stanley's supervisor to find an excuse to fire him. He was fired soon after making the most recent of his WPA-protected complaints. It extends logic to find, as the Court does, that there can be no dispute as to material fact that the entity that wanted to fire Stanley, and had told his supervisor to find an excuse to fire him, was not motivated, at least in part, by his protected complaints when he was fired soon after his most recent complaint.

[¶ 54] A motion for summary judgment must be denied if there remains for resolution by the fact-finder any dispute as to the material facts. *See MP Assocs.,* 2001 ME 22, ¶ 12, 771 A.2d at 1044. Here, there is a dispute as to material facts as to the timing of Stanley's complaints in relation to his adverse employment reviews and whether the motivation of the adverse employment actions was irrelevant to Stanley's complaints.

[¶ 55] Stanley may have a difficult case to prove to a fact-finder in light of other evidence of inadequate job performance. Certainly, a fact-finder could find, and perhaps would find, that no causal connection existed between Stanley's complaints and his dismissal. But that is a decision that must be reached after trial. The evidence here, including evidence of Stanley's complaints of unlicensed electrical work preceding his adverse employment reviews and his dismissal, and evidence that his supervisor told Stanley that he had been directed to find a way to fire him, creates at least a dispute as to material fact on these points. It certainly does not establish, beyond dispute, that there was no causal connection between Stanley's complaints and his discharge. Accordingly, I would vacate the judgment of the Superior Court and remand for a trial.