STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss.                          CIVIL ACTION
                                        DOCKET NO. CV-07-307

FILED
SUPE... C....T
DEC 0 1 2.03
PENOBSCOT COUNTY

MICHELLE M. CAHILL, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF THOMAS A. CAHILL, JR.,

       Plaintiff,

    v.                                  **ORDER**

BANGOR AREA HOMELESS
SHELTER,

       Defendant.


Plaintiff, Michelle M. Cahill (hereinafter "Mrs. Cahill"), filed a two-count complaint in her capacity as the personal representative of the estate of her late husband, Thomas A. Cahill, Jr. (hereinafter "Mr. Cahill"), seeking damages from Defendant, Bangor Area Homeless Shelter (hereinafter "the shelter") for wrongful death and conscious pain and suffering. *See* 18-A M.R.S. § 2-804 (2008). The shelter has filed a motion for summary judgment as well as a motion *in limine* to exclude the testimony of Brian Ames at trial. Mr. Cahill's estate has opposed both motions.

## BACKGROUND

On August 28, 2007, Mr. Cahill checked into the shelter and told its staff that he was taking certain psychiatric medications. Upon entering the shelter, Mr. Cahill signed an intake form that detailed some of the policies of the shelter, including a requirement that Mr. Cahill be in his room by 10 p.m. Although the policy required guests to be in their rooms by 10 p.m., they were apparently permitted to leave their rooms to access the bathroom or the

1

Cedar Street office. The shelter's policies prohibited guests from drinking on the premises and if a current guest was judged by the staff to be intoxicated then that guest was required to leave.

Mr. Cahill's room was located on the first floor of the shelter and was situated in such a place that the door to his room could not be seen from the Cedar Street office. Located directly across the hall from Mr. Cahill's room was a green door. This door was normally locked and led to the basement, which was used for storage as well as access to other parts of the facility. The bathroom door, which was also painted green, was nearby.[1]

On the evening of September 1, 2007, Mr. Cahill returned to the shelter at 10 p.m.[2] James Fleming, the shelter's overnight manager, observed Mr. Cahill return and go to bed. At 10:30 p.m. Fleming received a call from Mrs. Cahill indicating that she had received an earlier call from her husband and that, based upon that conversation, she believed him to be drunk. At 11 p.m. Fleming observed Mr. Cahill emerge from his room and walk to the bathroom, leaning towards the wall on the way down the hall with his right shoulder brushing against the wall.

Fleming accessed the basement at 1 a.m. on September 2, 2007 to restock supplies. When he returned from the basement, Fleming passed Mr. Cahill's room and, at that time, it looked to Fleming as though Mr. Cahill was still in his bed. Fleming did not lock the door upon leaving the basement. He next proceeded to the office and began watching a movie with a coworker. While watching the movie Fleming heard a 'thud', which he thought

---

[1] The parties' statements of material facts and the record cited therein describe the location of the door differently; however, it is clear that it was somewhere in the general vicinity. For the purposes of this motion, disputed facts are viewed in a light most favorable to the nonmoving party; therefore, for purposes of this motion the two doors are viewed as being a short distance apart. *See Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 18, 834 A.2d 947, 952.

[2] This time and all times stated hereafter are approximations.

2

sounded like a window closing. After the movie, Fleming went back to the basement to continue restocking. Fleming discovered Mr. Cahill with his pants around his ankles lying in an odd position at the bottom of the stairs, having apparently fallen. After the discovery of Mr. Cahill, the shelter staff called 911 and Mr. Cahill was subsequently taken to Eastern Maine Medical Center. Upon arrival at the hospital, Mr. Cahill's blood-alcohol content was .21%. Surgery was performed to relieve pressure Mr. Cahill's brain resulting from a blunt head trauma. The surgery was unable to save Mr. Cahill's life and he died on September 5, 2007 at Eastern Maine Medical Center after life support was removed.

Mr. Cahill's estate filed its complaint seeking damages for wrongful death and conscious pain and suffering on November 29, 2007. This Court issued a standard scheduling order dated January 9, 2008 pursuant to which discovery would remain open for eight months. During discovery, on May 8, 2008, Brian Ames, whose testimony is the subject of the shelter's motion *in limine*, was deposed.

Brian Ames has been a registered engineer since 1972 and has practiced in the areas of architectural and structural engineering since forming his own firm, Ames A/E, in 1974. He testified at his deposition that he uses his knowledge of building codes in nearly all aspects of his work. After Mr. Cahill's death, Ames personally visited the shelter and subsequently had a technician take measurements and pictures of the facility, including the basement stairs. He further testified that the handrail along the stairs to shelter's basement was not a 'continuous' railing within the meaning of the applicable building codes.

## MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when, after reviewing the parties' statements of material facts and the record evidence cited therein in a light most favorable to the nonmoving party, the court determines that there are no genuine issues of material fact. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825; *Stanley v. Hancock County of Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169, 174. A genuine issue of material fact exists when there is sufficient evidence to require the fact-finder to choose between competing versions of a fact that could affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d at 825; *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747.

### B. Statements of Material Facts

The Court takes this opportunity to address the parties' summary judgment practice in this particular case. The statements of material facts submitted by the parties are particularly problematic and their compliance with M.R. Civ. P. 56(h)(1) is questionable at best. The Court has the discretion to deny the motion outright for failure to comply with the requirements of M.R. Civ. P. 56(h)(1). *See Stanley*, 2004 ME 157, ¶¶ 27-29, 864 A.2d at 178-79. The Court does not deny the motion based upon such noncompliance in this instance; however, the practice used in this case should not be emulated or repeated.

In *Stanley* the Law Court criticized the practice of submitting unnecessarily long and repetitive statements of material facts. *Id.* ¶ 29, 864 A.2d at 179. Statements that repeat the same facts multiple times resulting in extremely long statements of material facts do not meet the "separate, short, and concise" requirement found in the first sentence of M.R. Civ. P. 56(h)(1). The present case involves the requirement found in the second sentence of M.R.

4

Civ. P. 56(h)(1) that "[e]ach fact asserted in the statement shall be set forth in a separately numbered paragraph." In the present case the parties have piled several facts together into many of their numbered paragraphs.

The following example helps illustrate such noncompliance.

> 19. When he returned to the shelter on his last night, September 1, 2007, Mr. Cahill was quiet and kept to himself; no one noticed signs of intoxication or smelled liquor on him.

(Def.'s Supp. S.M.F. ¶ 19) (record citations omitted). Clearly each fact is not "set forth in a separately numbered paragraph." M.R. Civ. P. 56(h)(1). This paragraph contains the following assertions: (1) Mr. Cahill returned to the shelter on the night of September 1, 2007; (2) September 1, 2007 was Mr. Cahill's last night; (3) upon his return Mr. Cahill was quiet and kept to himself; (4) no one noticed signs of Mr. Cahill's intoxication; and (5) no one smelled liquor on Mr. Cahill. Instead of setting forth these facts in five separate paragraphs, they were strung together in one paragraph. Noncompliance in such manner forces the opposing party to deny the group of facts contained in the paragraph even though such party may readily admit to several of the facts contained therein. This leads the Court to uncertainty as to which facts are truly uncontested. Such uncontested facts are the very basis for the Court's decision in a motion for summary judgment and should be clear from what is submitted by the parties.

In its statement of material facts, a party should seek to limit each paragraph to stating one new discrete fact. The facts of each case are unique and there is no magic formula for parsing out discrete facts from one another; however, paragraphs containing multiple sentences, introductory phrases, or several conjunctions most likely state multiple facts and should be avoided as much as possible.

5

## C. Duty of Care

In Maine, a landowner owes a duty of reasonable care to all those lawfully on the land. *Poulin v. Colby Coll.*, 402 A.2d 846, 851 (Me. 1979) (abolishing the former distinction between licensees and invitees). However, when a landowner permits a person to enter lawfully onto his property such permission does not automatically grant the entrant lawful entry into all portions of the property. One's status as a lawful entrant only extends to the portion of the property on which the landowner has given him reason to believe he may lawfully enter. *Collomy v. Sch. Admin. Dist. No. 55*, 1998 ME 79, ¶ 7, 710 A.2d 893, 895.

However, if the landowner intentionally or negligently misleads the entrant as to the scope of lawful entry, the entrant may still be entitled to relief even if he exceeds the scope of the invitation.

> The mere fact that the possessor knows that invitees in general, or a particular invitee, will be likely to go into parts of the premises to which he is not invited, is not enough in itself to bring such places within the area of invitation, unless the visitor is reasonably led to believe that he is so invited. An invitation usually includes the use of such parts of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his purpose is to be carried out. If the possessor has intentionally or negligently misled him into the reasonable belief that a particular passageway or door is an appropriate means of reaching the area of his invitation, the visitor is entitled to the protection of an invitee when he makes use of it. Likewise, if the possessor should realize that either one of two doors might be taken by the visitor to be the door to the area of invitation, the visitor may be entitled to the status of an invitee even though by mistake he enters the wrong door. In such a case the possessor, knowing the likelihood of a mistake, must take the risk incident to his failure to indicate the proper door.

*See* RESTATEMENT (SECOND) OF TORTS § 332 cmt. l. *See Montgomery Ward & Co. v. Steele*, 352 F.2d 822, 830 (8th Cir. 1965). Basically, if the confusion is attributable to the landowner then the one who entered is protected.

In this case, Mr. Cahill sustained the injuries leading to his death by passing through the door that led to the basement of the shelter. The pivotal question on summary judgment is whether or not by passing through the door Mr. Cahill exceeded the scope of his lawful entry and became a trespasser whereupon the shelter owed him no duty except to refrain from willfully injuring him. *See Thalhimer Bros. v. Casci*, 160 Va. 439, 444-45, 168 S.E. 433, 434-35 (1933). While it seems clear in hindsight that Mr. Cahill was not permitted to enter the basement, this does not necessarily eliminate the shelter's liability. Mr. Cahill's estate has suggested that the proximity and similarity of the basement door and the bathroom door could have led Mr. Cahill to exceed what was otherwise the scope of his lawful entry. If the shelter had reason to suspect such confusion (*i.e.*, it was foreseeable) and such confusion actually caused Mr. Cahill to enter the basement then Mr. Cahill could still be protected as a lawful entrant.[3] RESTATEMENT (SECOND) OF TORTS § 332 cmt. l. The shelter argues that such confusion could not have been the cause of Mr. Cahill's entry into the basement because the doors were not located close enough to each other and Mr. Cahill had been to the bathroom before; however, these are questions of fact that must be resolved by a jury and not by the Court in the context of a motion for summary judgment.

## D. Causation

The shelter also argues that it is entitled to summary judgment because Mr. Cahill's estate has failed to show sufficient evidence tending to show that the alleged negligence of the shelter proximately caused Mr. Cahill's death. The shelter contends that based upon the

---

[3] Mr. Cahill's estate has also argued that the shelter may have owed a heightened duty of care to Mr. Cahill because he was known to be part of a population of people (*i.e.*, those utilizing the shelter) who were particularly prone to mental illness. The Court need not reach this issue in the present motion because there are still genuine issues of material fact as to whether an ordinary duty of care was owed.

uncontested facts before the Court that a jury could only find causation as a matter of pure speculation.

Whether a defendant's acts or omissions were the proximate cause of injuries suffered by a plaintiff is generally a question of fact and summary judgment is improper "if any reasonable view of the evidence could sustain a finding of proximate cause." *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759 (citing *Kaechele v. Kenyon Oil Co.*, 2000 ME 39, ¶ 17, 747 A.2d 167, 173). Notwithstanding the general rule, summary judgment may be appropriate if the evidence of causation is so scarce as to require impermissible speculation by the jury.

> A defendant is entitled to a summary judgment if there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff.

*Id.* (citing *Merriam v. Wanger*, 2000 ME 159, ¶ 10, 757 A.2d 778, 781). The question the Court must now address is whether or not there is enough evidence to permit a reasonable jury to conclude that an act or omission by the shelter proximately caused Mr. Cahill's death.

No person witnessed Mr. Cahill's fall and, consequently, no person can testify that such fall occurred as the result of any act or omission on the part of the shelter. However, the lack of such evidence does not preclude liability if a plaintiff can show through other reliable evidence that a reasonable fact-finder could infer causation. *See Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 14, 694 A.2d 924, 926 (quoting *Thompson v. Frankus*, 151 Me. 54, 58, 115 A.2d 718, 720 (1955)). Mr. Cahill's estate has produced evidence that could lead a rational fact-finder to find that there was a dangerous condition on the basement stairs. Mr. Cahill was found at the bottom of the stairs, having apparently fallen. When an injured person is found

8

in close proximity to a dangerous condition and the injuries sustained are consistent with such condition being the cause, it is not wild speculation to conclude that the condition caused the injury. Such cases required rational inference not mere speculation.

The cases relied upon by the shelter do not suggest a contrary conclusion. Of such cases, only *Houde v. Millett* is a case where the claim is based upon premises liability stemming from a dangerous condition. In *Houde* the plaintiff fell on a kitchen floor and claimed it was caused by soot on the floor. *Houde*, 2001 ME 183, ¶¶ 6-7, 787 A.2d at 758. Despite such claim there was no evidence that such condition existed at the time of the fall. *Id.* Such case is factually distinct from the present case where the injured person was found in close proximity to the allegedly dangerous condition, which clearly existed at the time of the injury. The present case is more factually similar to *Rodrigue v. Rodrigue*, where the plaintiff fell on stairs that were cluttered with debris. *Rodrigue*, 1997 ME 99, ¶¶ 3, 6, 694 A.2d at 925. Even though the plaintiff could offer no direct evidence that the debris actually caused the fall, her injury was consistent with such cause and occurred in proximity to the allegedly dangerous condition. *Id.* ¶¶ 14-15, 694 A.2d at 927. Such facts in the present case, as in *Rodrigue*, are sufficient to defeat a motion for summary judgment.

## MOTION *IN LIMINE*

The shelter seeks to have the testimony of Brian Ames excluded *in toto* at trial because there is no evidence that the non-continuous handrail caused Mr. Cahill's injury.[4] Mr. Cahill's estate offers Ames' testimony as evidence of causation. The Law Court has recently provided detailed instructions as to the admissibility of expert testimony in *Tolliver*

---

[4] Mr. Cahill's estate has argued that this motion is premature; however, motions *in limine* can be brought at any time. *Gendron v. Pawtucket Mut. Ins. Co.*, 409 A.2d 656, 659 n. 3 (Me. 1979).

*v. Dep't of Transp.*, 2008 ME 83, 948 A.2d 1223, and this Court analyzes the admissibility of Ames' testimony in light of that decision.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

M.R. Evid. 702. For expert testimony to be admissible: (1) the witness must qualify as and be designated as an expert; (2) the expert's methodology must be sufficiently reliable; (3) the testimony must be relevant; (4) the testimony must assist the trier of fact in understanding evidence by providing insight beyond the judgment of a person of ordinary intelligence; and (5) the scope of the testimony must be within the witness's area of expertise. *Tolliver*, 2008 ME 83, ¶¶ 27, 28, 35, 948 A.2d at 1233-34; *State v. Williams*, 388 A.2d 500, 504 (Me. 1978).

In applying the aforementioned standards of admissibility to the testimony of Brian Ames, the Court must permit Ames to testify with certain limitations. Ames is an engineer who has expert knowledge of applicable building codes. Ames will be permitted to testify as to the existence and purpose of applicable building codes. He will be further permitted to testify as to whether there were violations of these building codes at the shelter based upon his examination of the facility. Basically, Ames will be permitted to tell the jury: (1) what building codes applied to the stairs at the shelter; (2) of which of these codes the shelter was in violation; and (3) the purpose of such codes, including the general nature of dangers that may result from specific violations. Such testimony by Ames is relevant evidence tending to show whether or not the standard of care was breached. *See Russell v. Accurate Abatement, Inc.*, 1997 ME 98, ¶ 5, 694 A.2d 921, 923.

10

Notwithstanding the admissibility of Ames' testimony regarding the building codes themselves, he is not qualified to testify as to the cause of Mr. Cahill's apparent fall or to tell a jury what may have happened in the early morning hours of September 2, 2007. Ames is not qualified to reconstruct what happened and lacks the "foundation necessary to offer an opinion as to the cause of *this particular accident*." *Tolliver*, 2008 ME 83, ¶ 35, 948 A.2d at 1234 (emphasis in original). Any conclusions by Mr. Ames as to what happened to Mr. Cahill are beyond his area of expertise and may not be presented to a jury.

## CONCLUSION

The shelter's motion for summary judgment is denied because genuine issues of material fact remain that cannot be determined in the context of a motion for summary judgment. In response to the shelter's motion *in limine*, the testimony of Brian Ames will be limited in accordance with this order. His expert testimony must remain within the scope of his expertise.

The entry is:

1.    The defendant's motion *in limine* is **GRANTED IN PART**. Brian Ames will be permitted to testify provided that such testimony is limited in accordance with this opinion.

2.    The defendant's motion for summary judgment is **DENIED.**

3.    This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: December ____, 2008

M. Michaela Murphy
Justice, Superior Court

11

MICHELLE M CAHILL VS BANGOR AREA HOMELESS SHELTER
UTN:AOCSsr  -2007-0137766                          CASE #:BANSC-CV-2007-00307
-----------------------------------------------------------------------------
   SEQ TITLE              NAME                              DOB   ATTY
   001 PL       MICHELLE MARIE CAHILL P R EST THOMAS A CAHIL  / /    T
   002 DEF      BANGOR AREA HOMELESS SHELTER                         T


   R.T. DUDDY ESQ. AND JOHN MCARDLE, ESQ. FOR PLAINTIFF
   MICHAEL MARTIN, ESQ. AND LAURA WHITE, ESQ. FOR DEFENDANT