2002 ME 82

PEOPLES HERITAGE SAVINGS BANK

v.

**Rodney E. PEASE et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: April 18, 2002.

Decided: May 21, 2002.

Philip K. Jordan, Houlton, for plaintiff.

Constance L. Pease, Orrington, Rodney E. Pease, Brewer, for defendants.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Rodney and Constance Pease[1] appeal from the District Court's (Bangor, *Russell, J.*) entry of a default judgment against Constance and summary judgments against Rodney on Peoples Heritage Savings Bank's foreclosure complaint and on Rodney's counterclaim. The Peases contend that the court erred in entering a default judgment against Constance because she was not served properly. The Peases also contend that the court erred in entering the summary judgments because: a Peoples agent illegally notarized the mortgage deeds, there are genuine issues of material fact regarding whether Peoples entered into and then breached a renegotiated agreement with the Peases, and there are genuine issues of material facts as to whether Peoples correctly stated the amount required to cure the defaults on the loans. We affirm the entry of the default judgment and vacate the summary judgments in part.

I. BACKGROUND

[¶ 2] The Peases and Peoples executed five notes secured by mortgage deeds on May 31, 1991; July 26, 1991; August 30, 1994; January 6, 1995; and August 22, 1995. All mortgage deeds were notarized by Peoples employees.

[¶ 3] The Peases failed to make a number of payments, and in June of 2000, Peoples sent them, for each note, a notice of default and a notice of their right to cure by paying the amount of the arrearage. The notice for the August 22, 1995, loan stated that the arrearage in monthly payments was $7,944.75, that no other charges or fees applied, and that the total due was $9,036.76. None of the other notices included mathematical inconsistencies, but the notice for the July 26, 1991, loan reported the arrearage in monthly payments and the total amount due to cure the default as $9,036.76.

[¶ 4] Rodney sent a letter to Peoples in which he disputed the amount due on each loan and requested verification of the debts. Peoples sent the Peases a letter

---

**1.** The other named defendant, Jeffrey Small, d.b.a. Electrical Installation and Design, is not a party to this appeal.

outlining options available to avoid foreclosure if they acted before July 28, 2000. The three options were: (1) a forbearance agreement mortgaging all the Peases' real property to the bank, (2) payment of the full amount demanded, or (3) signing over their deeds for liquidation in lieu of foreclosure. The bank filed its foreclosure complaint on all five notes on July 28.

[¶ 5] Thomas M. Davis, an employee in the Recovery Department of Banknorth Group, Inc.,[2] sent letters dated August 8 to the Peases verifying an agreement that he had reached with them to pay off the August 30, 1994, and August 22, 1995, loans with $570 and $575 monthly payments beginning on August 15, 2000. A summons for each of the Peases was served by hand to Rodney at the parties' Brewer address on August 15, 2000. Two days later, Peoples sent the Peases a check for $1390 representing a refund of the Peases' payments on the three loans *not* renegotiated with Davis. Peoples stated that it would accept a full lump sum payment only.

[¶ 6] Acting pro se, Rodney filed an answer and counterclaim; Constance did not sign the answer, although it purports to be the answer of both Peases. The counterclaim alleges that Peoples supplied inaccurate information, failed to credit payments, and breached its new agreement. The counterclaim seeks money damages, the discharge of all liability to Peoples, costs, and interest.

[¶ 7] Peoples moved for a summary judgment on its complaint, attaching a statement of material facts supported by copies of the notes, mortgages, and notices authenticated by the affidavit of Catherine E. Melville, Assistant Vice President of Peoples. Rodney, again purporting to act for himself and Constance, opposed the motion with a statement of facts that disputed the amounts stated in the notices of default, and provided the details of the new agreement with Davis. He provided copies of the letters Davis sent to the Peases confirming their agreement. These documents were presented as exhibits attached to Rodney's affidavit, which fails to include a statement that it is based on personal knowledge.

[¶ 8] Although Peoples did not file a reply statement of material facts,[3] it did provide a "statement of facts" in its responsive memorandum of law that includes the statement that Davis lacked the authority to bind the bank. Peoples attached the affidavit of Nicholas H. Penfield, Assistant Vice President of Peoples, in which he avers that the bank returned checks numbered 1555 and 1556 tendered pursuant to the Peases' agreement with Davis; the attached letter submitted to establish this fact, however, purports to return payments tendered by checks numbered 1558, 1559, and 1560, on the three notes *not* renegotiated by Davis.

[¶ 9] The court held a hearing on November 21, 2000, at which Rodney presented a document entitled "SPECIAL POWER OF ATTORNEY," purporting to authorize Rodney to represent both himself and Constance in the foreclosure proceeding. The form lists Rodney and Constance's address in Brewer. The court entered a summary judgment against Rodney, and a default judgment against Constance because Rodney may not legally represent her in court.[4] Rodney moved for findings of fact and conclusions of law,

---

**2.** The parties do not dispute that Davis is an employee of Peoples.

**3.** The Peases do not challenge this procedural deficiency on appeal.

**4.** *See* 4 M.R.S.A. § 807 (Supp.2001) (entitled "Unauthorized practice of law").

but the court denied the motion. Rodney appealed to the Superior Court (Penobscot, *Hjelm, J.*), which dismissed his appeal for lack of a final judgment on the counterclaim.

[¶ 10] After the case was remanded to the District Court, Peoples moved for a summary judgment on the counterclaim based on the Penfield affidavit. Peoples did not submit a statement of material facts with its motion on the counterclaim.[5] Rodney filed an opposition to the motion and included a statement of disputed facts with supporting documentation. The statement is identical to the statement submitted in opposition to the motion on the complaint, except that it also includes statements that the bank employees supplied erroneous information and that the Peases paid some interest. The account histories Rodney submitted acknowledge that the Peases made some interest payments on each loan, but the account statements reveal that they were nonetheless thousands of dollars in arrears on the May 31, 1991, and January 6, 1995, loans at the time of foreclosure.[6] The Peases did not submit account statements disclosing whether they were in arrears on the other three loans. Peoples responded to Rodney's affidavit paragraph by paragraph and referred to pleadings and exhibits submitted in connection with the motion for summary judgment on the complaint. The court entered a summary judgment. Rodney appeals from the entry of the summary judgments and Constance appeals from the entry of the default judgment in this consolidated appeal. The court amended the Docket Sheet to reflect Constance's Orrington address on the day she filed her notice of appeal.

## II. DISCUSSION

### A. Default Judgment Against Constance

■ [¶ 11] Constance contends that Peoples failed to serve a summons on her at her Orrington residence, which is her dwelling house and usual place of abode, and that she had no knowledge of the action until December 10, 2001. She also contends that Rodney attended the November 21, 2000, hearing with her power of attorney but that she was unrepresented at the hearing because the court did not permit Rodney to represent her.

■ [¶ 12] Peoples contends that it properly served Constance's summons by handing it to Rodney, a person of appropriate age and discretion, at the Peases' Brewer address. According to Peoples, the power of attorney form Rodney presented to the court listed his and Constance's address in Brewer, and the record suggests Constance knew about the court proceedings and failed to appear personally or through counsel. Finally, Peoples contends that Constance waived this issue by failing to allege a defense of insufficient service of process pursuant to M.R. Civ. P. 12.

[¶ 13] The foreclosure statute provides that "[s]ervice of process on all parties in interest and all proceedings must be in accordance with the Maine Rules of Civil Procedure." 14 M.R.S.A. § 6321 (Supp. 2001); *see also LaFosse v. Champagne*, 2000 ME 81, 750 A.2d 1254. The Rules permit service upon a competent adult by leaving a copy of it "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . ." M.R. Civ. P. 4(d)(1). A defense of insufficient service of process must be raised in a responsive pleading or by motion or it is not preserved. M.R. Civ. P. 12(b) & (h).[7]

---

5. The Peases do not challenge this procedural deficiency on appeal.

6. Rodney's affidavit introducing his exhibits on the counterclaim avers that he has personal knowledge.

7. Rule 12 provides, in pertinent part:

[¶ 14] The court did not err in entering a default judgment against Constance because Constance had actual notice of the foreclosure,[8] service was made in hand to her spouse, and she failed to file a motion to dismiss for insufficient service. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice*, § 4.5 at 69 (2d ed. 1970) ("If the defendant has received actual notice by the method of service used, the court should hesitate in finding the service insufficient for some technical noncompliance with Rule 4(d)(1)."). We affirm the entry of the default judgment.

## B. Summary Judgments

### 1. Notarizations

■ [¶ 15] Rodney contends that Peoples employees notarized the mortgage deeds in violation of 4 M.R.S.A. § 954 (1989). Peoples contends that its employees acted legally because neither of them were parties to the instrument individually or as bank representatives.

Section 954 provides, in pertinent part:

Any notary public who is a[n] ... employee of a bank or other corporation may take the acknowledgment of any party to any written instrument executed to or by such corporation .... It shall be unlawful for any notary public to take the acknowledgment of an instrument by or to a bank .... of which he is a[n] ... employee where such notary is a party to such instrument, either individually or as a representative of such bank ....

[¶ 16] The statute does not prohibit a bank employee from taking the acknowledgment on a mortgage deed to the bank unless the notary is a party to the instrument individually or as a bank representative. Because the Peases alone executed the mortgage deeds, the bank employees who signed as notaries and witnesses were not "part[ies] to such instrument[s]" either individually or as Peoples representatives. The statute prevents bank employees from notarizing their own signatures; it does not prevent them from notarizing the signatures of borrowers on mortgage deeds. The documents were validly notarized.

### 2. Davis's Apparent Authority

[¶ 17] Rodney contends that he entered into an agreement with Peoples, through Davis, that Peoples has not honored. According to Rodney, the complaint was not served until August 15, 2000, after the parties had already reached an agreement regarding two of the loans.

[¶ 18] Peoples contends that Davis lacked the authority to enter into negotiations with the Peases. According to Peoples, Davis lacked express or apparent authority because Peoples had already informed the Peases in writing that they were not to make any further payments and provided a list of their options. Peoples contends that it refused to accept the Peases' checks, returning them within ten days in compliance with 14 M.R.S.A. § 6204 (Supp.2001), and making clear that

---

(b) ... Every defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (5) insufficiency of service of process ....

(h) **Waiver or Preservation of Certain Defenses.**

(1) A defense of ... insufficiency of service of process is waived ... (B) if it is

neither made by motion under this rule nor included in a responsive pleading or an amendment thereof ....

**8.** Although Constance contends that she lacked notice of this foreclosure proceeding before December of 2001, it is clear from the "special power of attorney" she signed that she had actual notice of the foreclosure proceeding before the November 21, 2000, hearing.

Davis lacked the authority to bind the bank to an agreement with them.

[¶ 19] Section 6204 provides, in pertinent part:

> The acceptance, before the expiration of the right of redemption and after the commencement of foreclosure proceedings of any mortgage of real property, of anything of value to be applied on or to the mortgage indebtedness by the mortgagee ... constitutes a waiver of the foreclosure, unless an agreement to the contrary in writing is signed by the person from whom the payment is accepted or, with regard to foreclosures commenced by civil action ... unless the bank returns the payment to the mortgagor within 10 days of receipt. . . .

> The mortgagee and the mortgagor may enter into an agreement to allow the mortgagor to bring the mortgage payments up to date with the foreclosure process being stayed as long as the mortgagor makes payments according to the agreement. If the mortgagor does not make payments according to the agreement, the mortgagee may, after notice to the mortgagor, resume the foreclosure process at the point at which it was stayed.

 [¶ 20] Whether an agency relationship exists is a question of fact. *Steelstone Indus., Inc. v. N. Ridge Ltd. P'ship*, 1999 ME 132, ¶ 12, 735 A.2d 980, 983. A person has apparent authority to act for a principal if the principal knowingly permits the agent to exercise authority or holds the agent out as possessing authority. *Id.* at ¶ 13. Thus, the principal's conduct must cause a party reasonably to believe a person acts as an agent of the principal. *Id.*

[A]pparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent.

RESTATEMENT (SECOND) OF AGENCY § 27 cmt. a (1958). An agent has apparent authority to do what an employee in his position would customarily do, if the third party knows of his position with the principal, but not of what the employer actually authorized him to do in that position. *Id.* cmt. d. For instance, a teller for a savings and loan association has apparent authority to bind the association by accepting tender of a late payment. *Sav. & Loan Ass'n of Bangor v. Tear*, 435 A.2d 1083, 1085 (Me.1981).

 [¶ 21] The letters from Davis suggest that, notwithstanding Peoples' earlier letter listing the Peases' options, Davis agreed to a new payment schedule for two of the five loans at issue in the present case. This evidence gives rise to genuine issues of material fact regarding whether Davis acted for Peoples in forming a new contract and whether Peoples breached the agreement if it was made.[9] The court erred in granting the summary judgments on these two notes, especially because the evidence did not establish that the checks tendered on the two renegotiated loans were refused or the proceeds returned. As to the two notes negotiated by Davis, we vacate the court's summary judgments on the complaint and on the counterclaim for breach of contract.

---

9. If the parties entered into a new and valid contract, the bank's return of the checks within ten days of receipt has no effect because the foreclosure proceeding based on the original (superseded) agreements is stayed unless and until the Peases default on the new agreement. 14 M.R.S.A. § 6204.

### 3. Accuracy of statements

[¶ 22] Rodney contends that the affidavit accompanying the motion for summary judgment on the complaint demonstrates that Peoples' records inconsistently report the amounts due on the loans. He further contends that on three of the loans, he and Constance were required to make interest payments only, which they did.

[¶ 23] As to the summary judgment entered on its complaint, Peoples contends that Rodney failed to produce any documentary evidence setting forth a genuine issue of material fact regarding the amounts due on his loans. Peoples further contends that many of Rodney's statements are overly general and not presented in affidavit form because he does not aver personal knowledge. As a result, Peoples contends that Rodney has admitted the facts listed in its statement of material facts, which support the court's judgment.

[¶ 24] As to the summary judgment entered on the counterclaim, Peoples contends that Rodney failed to show that there was a genuine issue for trial. According to Peoples, Rodney merely reproduced the evidence from the first motion and added "random copies of account history on all the loans, all of which predate the Complaint for Foreclosure."

■ [¶ 25] An affidavit submitted in opposition to a motion for summary judgment must show affirmatively that it is based on the affiant's personal knowledge. *Bahre v. Liberty Group, Inc.*, 2000 ME 75, ¶ 12, 750 A.2d 558, 561 (citing M.R. Civ. P. 56(e)). If it is apparent from the content of an affidavit that the affiant had personal knowledge of the facts averred, the court will consider the affidavit and the documents attached to it. *Casco N. Bank, N.A. v. Estate of Grosse*, 657 A.2d 778, 781 (Me.1995). If a party fails to object to an improper affidavit as unsupported by the affiant's personal knowledge, the issue is not preserved for appellate review. *Biette v. Scott Dugas Trucking & Excavating, Inc.*, 676 A.2d 490, 495 (Me.1996).

■ [¶ 26] Peoples has failed to preserve this issue on appeal because, although it challenged the specificity and relevance of the statements and materials Rodney submitted, it did not raise the issue of his personal knowledge in the District Court. Even if the issue were preserved, however, Rodney's affidavit reveals that he had personal knowledge of his dealings with Peoples and of the documents that he submitted with his affidavit.

[¶ 27] Nonetheless, Rodney has failed to produce evidence establishing the inaccuracy of Peoples' calculations, other than the clerical error in one notice of default, which Rodney does not contend was perpetuated in the judgment. He has failed to offer any comprehensive evidence of what he has paid or actually owes on the accounts. On this issue, the court did not err because Rodney failed to raise a genuine issue of material fact regarding the amount of damages.

The entry is:

Default judgment against Constance affirmed. Summary judgment on the complaint vacated as to the notes executed on August 30, 1994, and August 22, 1995, but in all other respects, affirmed. Summary judgment on the counterclaim vacated as to the breach of contract claim on the notes executed on August 30, 1994, and August 22, 1995, but in all other respects, affirmed. Remanded to the District Court for further proceedings consistent with this opinion.