STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-09-194
JON -YOR- 6/28/2012

CAROLLE LUMB

Plaintiff

v.

NAHABET CIMENIAN, WILLIAM
BLY, CHRIS NIELSON, NIELSON &
BLY, LLC, NIELSON & BLY, P.C.,
RICHARD GANNETT, and GANNETT
& ASSOCIATES

Defendants

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the court is Bly, Nielson, Nielson & Bly, LLC and Nielson & Bly P.C.'s

(the "Bly and Nielson Defendants") motion for summary judgment on the plaintiff's

complaint for wrongful use of civil proceedings. The Bly and Nielson Defendants have

filed a memorandum and statement of material facts in support of the motion. Carolle

Lumb (the "Plaintiff") has opposed the motion and filed a memorandum of law,

responses to the defendants' statements of material facts and additional statements of

material fact on May 21, 2012. The Bly and Nielson Defendants filed a reply on June 4,

2012. No motion for an extension of time was made and, thus, this reply is untimely.

Oral argument was held on June 19, 2012.

## BACKGROUND

William Bly and Chris Nielson, operating as Nielson & Bly, LLC and/or Nielson

& Bly, P.C., agreed to represent Nahabet Cimenian and bring a civil action in the Maine

courts (the "Maine Complaint") against Carolle Lumb at the request of Mr. Cimenian's

1

Massachusetts attorney, Richard Gannett. (Def. SMF ¶¶ 1, 13.) Attorney Gannett represented Mr. Cimenian in prior actions regarding the underlying facts of this case, including a Massachusetts action very similar to the Maine Complaint that was dismissed for lack of personal jurisdiction over Ms. Lumb. (Def. SMF ¶ 20.) The client engagement letter is signed by Attorney Gannett but specifies that all duties and loyalties are owed to Mr. Cimenian, the client. (Def. SMF ¶ 17.) Bly and Nielson drafted the Maine Complaint using materials and information given to them by Attorney Gannett and Mr. Cimenian. (Def. SMF ¶ 23.) Attorney Gannett remained very involved in the Maine case and even unsuccessfully petitioned for admission *pro hac vice*. (Def. SMF ¶¶ 29-30.)

The underlying events of the case filed in Maine arose from an agreement between Mr. William Lumb (Carolle Lumb's husband), Mr. Cimenian, and Mr. Fernald. The three agreed to purchase a claim from the bankruptcy estate of Catherine Duffy Petit, including an interest in real property located at 1 Fourth Street, Old Orchard Beach, Maine. (Pl. Add'l SMF ¶ 1.) Mr. Cimenian contributed $70,000 for a ¼ share, Mr. Fernald contributed $140,000 for ½ share, and Mr. Lumb took deed to the property solely in his name and received ¼ share. (Pl. Add'l SMF ¶ 4.)[1] Ms. Petit was later indicted and prosecuted on several federal charges. At Ms. Petit and Mr. Cimenian's request, Mr. Lumb mortgaged the property to cover expenses for Ms. Petit's legal defense. (Pl. Add'l SMF ¶¶ 5, 6.)[2] The mortgage given to Saco Valley Credit Union to refinance the

---

[1] The Plaintiff asserts that Mr. Lumb contributed $62,000 but record citation does not support this statement. (Pl. Add'l SMF ¶ 4.)

[2] The Defendant objects to support offered. The affidavit of William Lumb does not comply with M.R. Civ. P. 56(e) because it does not state that it was made upon the affiant's personal knowledge. However, if it is apparent from the content of the affidavit that the affiant had personal knowledge of the facts averred, the court may consider the affidavit. *Peoples Heritage Savings Bank v. Pease*, 2002 ME 82, ¶ 25, 797 A.2d 1270. The record citation to the William

2

property in order to raise money for the legal defense listed both Carolle and William B. Lumb as "borrowers" and was signed by both of them. (Def. SMF ¶ 25.) The Plaintiff was listed on other paperwork related to the transaction with the credit union and the proceeds were distributed by check to both Carolle and William. (Def. SMF ¶¶ 25-27.)

After Ms. Petit was found guilty and incarcerated, Mr. Lumb sold the property to James and Patricia Brown. Ms. Lumb states that Mr. Lumb met with Attorney Gannett and Mr. Cimenian to provide an accounting of the money received from the sale. (Pl. Add'l SMF ¶ 8.)[3] Thereafter, in 2001, Mr. Lumb filed for bankruptcy protection under Chapter 7 and received a discharge. Mr. Cimenian apparently did not file a claim with the bankruptcy court for the monies sought in the Maine Complaint.

In 2002, Mr. Cimenian filed an action against Ms. Lumb in Massachusetts Superior Court that was dismissed for lack of personal jurisdiction. On July 20, 2005, Attorney Gannett hired Attorneys Bly and Nielson to bring the Maine Complaint. Attorneys Bly and Nielson proceeded to file the Complaint and proceed against Ms. Lumb because they could not proceed against Mr. Lumb due to his bankruptcy discharge. (Def. SMF ¶ 22.) The Maine Complaint, filed in July 2005, brought nine counts against Ms. Lumb: declaratory judgment, unjust enrichment, accounting, constructive trust, conversion, conspiracy to commit conversion, fraud, constructive fraud, and conspiracy to commit fraud. (Def. SMF ¶ 2.) This complaint survived a motion to dismiss and counts 2 and 4-9 survived a motion for summary judgment. (Def. SMF ¶ 3; Pl. Resp.

---

Lumb affidavit cites to two paragraphs where it is clear that the affiant has personal knowledge of the events because he is discussing his personal interaction with other parties.

[3] The support for this statement of fact cites to the wrong paragraph of the William Lumb affidavit and then cites to an exhibit that is not labeled. However, because the court has found the materials supporting this statement, it considers this fact.

SMF ¶ 3.)[4] A bench trial was held in February 2007 in York Superior Court. (Def. SMF ¶ 5.) Justice Fritzsche found for Ms. Lumb on all counts and stated, "none of these complaints...have even the slightest merit after examining all of the evidence." (Pl. Add'l SMF ¶ 16; Def. Ex. G. at 100.) Ms. Lumb later moved for attorneys' fees because of the baseless and frivolous suit brought against her and was awarded in excess of $50,000 in fees to be paid by Mr. Cimenian. (Def. SMF ¶ 8.) She now brings this suit for wrongful use of civil proceedings against Mr. Cimenian, Attorney Gannett, and Attorneys Bly and Nielson for their actions in filing and prosecuting this civil case in Maine.

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); see also Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶ 4, 770 A.2d 653. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between

---

[4] The Plaintiff does not dispute that the Maine Complaint survived the two dispositive motions but, instead, argues that the only way the Maine Complaint was able to survive was that the Bly and Nielson defendants repeatedly stated that she "sold" the property and "converted the funds to her own use" despite knowing that she never held record title in her name and having seen an accounting of the sale proceeds. She also alleges that Defendant Cimenian provided false testimony in the affidavits submitted in support of these two motions. (Pl. Resp. SMF ¶ 3.)

This qualification is supported by reference to paragraph 9 of the Plaintiff's affidavit. Like Mr. Lumb's affidavit, this affidavit does not comply with M.R. Civ. P. 56(e) because it is not clear that it is based on personal knowledge, does not attach sworn copies of the papers referred to therein, and does not affirmatively show that she is competent to testify to the matters stated therein. Although the court can overlook the failure to state that the affidavit is made based on personal knowledge when it is clear from the face of the affidavit that the affiant has personal knowledge, the other defects cannot be overlooked. Paragraph 9 of the Plaintiff's Affidavit refers to affidavits filed by Mr. Cimenian but does not attach those affidavits for the court's review and there is no basis from which the court can infer that Ms. Lumb is competent to testify as to Mr. Cimenian's alleged perjury.

Furthermore, paragraph 9 of the Plaintiff's Affidavit does not provide any support for the contention that Bly and Nielson knowingly made untrue statements in the dispositive motions. Thus, the Plaintiff has not properly put before the court any evidence that Mr. Cimenian filed a false affidavit or that the Bly and Nielson Defendants had any knowledge of the falsity of Mr. Cimenian's affidavit or the falsity of the claims they made to the court.

4

competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (*quoting Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178). In considering a motion for summary judgment, the court should view the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702.

Wrongful use of civil proceedings "exists when (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought." *Pepperell Trust Co. v. Mountain Heir Financial Corp.*, 1998 ME 46, ¶ 17, 708 A.2d 651 (*citing* RESTATEMENT (SECOND) OF TORTS § 674). Probable cause exists when there is reasonable belief in the existence of facts upon which the claim is based and either a correct or reasonable belief that, under those facts, the claim is valid under the applicable law. RESTATEMENT (SECOND) OF TORTS § 675. This standard does not require an attorney to accurately predict the outcome of a case according to the appropriate standard of proof but it does require an honest determination of whether there is a reasonable chance for success. Probable cause exists if any reasonable attorney would have thought the claim was tenable. *Roderick v. Weissman*, 2012 U.S. Dist. LEXIS 23945, * 17, (E.D. Cal. Feb. 24, 2012).

Comment d to section 674 of the Restatement states that an attorney is not liable if he has probable cause for bringing an action or, even if he has no probable cause and is convinced that the client's claim is unfounded, if he acts primarily for the purpose of aiding a client in the adjudication of the claim. RESTATEMENT (SECOND) OF TORTS § 674,

5

cmt. d. Examples of "improper purpose" include pursuing a claim in order to put pressure on an individual to compel payment on a different claim or solely for the purpose of harassment. *Id.* Section 676 provides additional examples of "improper purpose" as applied to the individual prosecuting a claim, rather than specifically the attorney. *Id.* at § 676, cmt. c. These include knowing that the claim could only be successful on the basis of perjured testimony, being primarily motivated by ill will or hostility, or pursuing the claim for the purpose of depriving one of the beneficial use of property, for the purpose of obtaining a nuisance settlement, or for the purpose of delay. *Id.*

The Maine courts have not dealt with the application of this tort to the actions of an attorney. Some courts in other jurisdictions have held that attorneys have immunity from liability "to third persons arising from the performance of [] professional activities as an attorney on behalf of and with the knowledge of [the] client," provided the attorney acts in good faith. *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (S.C. 1986). The reasons for this immunity is to allow attorneys to act freely in advising their clients and to prevent the conflict of interest that will arise if an attorney fears reprisal for zealous (or overzealous) advocacy. This does not leave the wronged party without remedy because client does not have any immunity and also, the wronged party could pursue disciplinary proceedings against the attorney. *Id.* at 530. Also, in some courts, an attorney is not immunized from liability if he acted with malice in conspiring to bring a groundless action or if he knew the client was motivated primarily by malice. *Maechtlen v. Roberts*, 121 Kan. 777, 780, 250 P. 303, 304 (Kan. 1926).

Other courts, notably in California, do not recognize immunity for attorneys from the claims of third parties for wrongful use of civil process. *See* 27 A.L.R. (3d) 1113

6

(1969). Additionally, the California courts analyze the question of whether there was probable cause to bring the claim not on the subjective understanding of the facts of the case by the attorney and the research that was conducted but on an objective standard based on the facts known at the commencement of the suit or revealed during litigation. *Downey Venture v. LMI Insurance Co.*, 66 Cal. App.4th 478, 497-98 (1998).

The policy reasons for immunizing attorneys from prosecution for wrongful use of civil proceedings, as stated by the South Carolina court, are valid concerns. Comment d to section 674 of the Restatement seems, in part, to confirm this position. However, because the Law Court has not addressed this question, this court will directly consider whether, objectively, the attorneys had probable cause and, if not, whether their subjective motive was primarily improper.

Attorneys Nielson and Bly filed the Maine Complaint in this case based on the facts asserted in the files that Attorney Gannett provided and on facts gathered during conversations with Attorney Gannett and Mr. Cimenian. There is no record evidence to suggest that the attorneys had access to all of Attorney Gannett's files or information. (Def. Reply to Pl. Add'l SMF ¶ 15.) Those documents in their possession reveal that Ms. Lumb was listed as a borrower on the mortgage, in the settlement statement, and on all the paperwork provided by Saco Valley Credit Union. (Def. SMF ¶¶ 25, 26.) The check, distributing the proceeds of the refinancing, was issued to both Mr. and Ms. Lumb. (Def. SMF ¶ 27.) Based on these facts, the attorneys state that there was probable cause to believe that Ms. Lumb had control over the disbursement and use of the money. The attorneys also argue that their belief that the case had merit persisted throughout the trial because of the settlement offer received and because the claims survived both a motion to dismiss and substantially survived a motion for summary judgment.

7

The Plaintiff's opposition is based largely on her assertion that Nielson and Bly knowingly submitted false affidavits claiming that she "sold" the property when they had a title report to the contrary. She argues this fact both to show that the claims filed had no merit and to discount the fact that this complaint survived a motion to dismiss and a motion for summary judgment. (Pl. Mem. in Opp. 9-10.) Ms. Lumb also argues that the claim for the entire proceeds was unsupported because they only had evidence that she used "some" of the money. (Pl. Mem. in Opp. 11.) Additionally, she argues that the suit against her was an attempt to enforce an oral partnership agreement. She argues that the attorneys should have known that Mr. Lumb was free to do what he wanted, within his fiduciary duties, in the absence of a written agreement, and, that because she was not a party to the agreement, there is no basis for her liability.

Proving that Ms. Lumb was in fact an owner was not central to Mr. Cimenian's claim. He asserted that Ms. Lumb had access to and control over the money and that she used it improperly for personal gain. Even without a basis in title, Mr. Cimenian's equitable claims appear objectively to be valid and based on undisputed record evidence. Furthermore, Ms. Lumb's argument does not take into account the fact that property may be conveyed without recording the conveyance in the appropriate registry of deeds. Therefore, the title search itself does not make the claim that Ms. Lumb "sold" the property necessarily false, particularly when other documentation such as a mortgage granted to Saco Valley Credit Union listing both Carolle and William Lumb as "Borrowers" and a check from Saco Valley Credit Union paid to her order, supports such a conclusion. Ms. Lumb's characterization of the Maine Complaint as an attempt to enforce an oral partnership agreement to which she was not a party, ignores the actual claims that were made and the fact that they are equitable in nature.

8

Ms. Lumb also argues that Bly and Nielson should have realized that these was no probable cause and dismissed the case when they learned about the "Legal Defense Fund" funded by the mortgaged property because this fact tends to negate Mr. Cimenian's claims. Mr. Cimenian continued to deny any knowledge of the existence of the fund – a denial that Justice Fritzsche found lacked credibility. However, there is no evidence suggesting that the attorneys were ever aware that Mr. Cimenian was lying in this denial. Attorneys are not required to distrust their clients and, in fact, owe a duty of loyalty. Absent complete knowledge of falsity, an attorney is not required to act in a way contrary to the interests of the client.

Based on the facts that were known to Attorneys Bly and Nielson at the time they filed the Complaint and throughout the trial, probable cause for bringing the claims alleged in this suit existed. Because the court finds probable cause, the second prong of the analysis does not need to be considered.

**The entry is:**

The defendants' Motion for Summary Judgment is GRANTED. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: 6/28/12

John H. O'Neil, Jr.
Justice, Superior Court

9

ATTORNEYS FOR PLAINTIFF:
JOSEPH L GOODMAN
LEIGH BERTRAND
THE GOODMAN LAW FIRM PA
PO BOX 7523
PORTLAND ME  04112

ATTORNEYS FOR DEFENDANTS CHRIS NIELSEN, WILLIAM BLY, NIELSEN
AND BLY PC, NIELSEN AND BLY LLC:
JAMES BOWIE
HILLARY J BOUCHARD
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME  04112-4630

ATTORNEY FOR DEFENDANT NAHABET CIMENIAN:
THOMAS MARJERISON
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME  04112-4600