# KENSINGTON DEVELOPMENT CORPORATION
and LRB Associates, Ltd., Plaintiffs-Appellants,

v.

## Scott M. ISRAEL, Derald West, David P. Sweeney and Stephen L. Cleary, Defendants-Respondents.†

Court of Appeals

*No. 86–0846. Submitted on briefs December 16, 1986.—Decided April 1, 1987.*

(Also reported in 407 N.W.2d 269.)

† Petition to review granted.

For the plaintiffs-appellants the cause was submitted on the briefs of *Thomas D. Georgeson* of *Johnson, Brendemuehl & Georgeson* of Oconomowoc and *Mary Anne Gerstner* of *Burke, Griffin, Chomicz & Wienke, P.C.,* of Chicago, IL.

For the defendant-respondent, Scott M. Israel, the cause was submitted on the brief of *James G. Allison* of *Whyte & Hirschboeck, S.C.* of Milwaukee. For the defendant-respondent, Stephen L. Cleary, the cause was submitted on the brief of *Edward A. Hannan* and *Maurita Houren* of *Godfrey, Trump & Hayes* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. At common law, a publication made in a judicial proceeding enjoys an absolute privilege from later charges of defamation. Because the legislature's slander of title statute, sec. 706.13, Stats., is contradictory to this common law, we hold that the filing of a lis pendens in this case enjoys only a conditional privilege. Since the trial court conferred an absolute privilege, we reverse and remand with directions.

On August 19, 1983, an involuntary petition, pursuant to Chapter 11 of the United States Bankruptcy Code, was filed against Delafield Development. Delafield's major asset is the Heritage Ridge Shopping Center. Two of Delafield's partners were Waukesha Venture and Rubin Associates, both owned by James Flanagan.

In addition to a claim by the Chemical Bank of New York, whose foreclosure action precipitated the bankruptcy action, Delafield also faced unsecured creditor claims totaling approximately one million dollars. A creditor's committee, composed of Scott M. Israel, Derald West and David P. Sweeney, and represented by attorney Stephen L. Cleary, was formed to protect their interest.

During the latter half of 1984, James Flanagan, acting as debtor in possession for Delafield, proposed a plan whereby Chemical's mortgage interest would be purchased by a third party, LRB Associates, Ltd., at a foreclosure sale. LRB would then own the shopping center and related parcels. The specifics of this proposal were explained to the bankruptcy court and the creditor's committee during a hearing on October 22, 1984. During the hearing, Flanagan represented that none of the partners of the debtor had any connection or relationship with LRB. This representa-

tion was necessary to ease the court's concern about whether an "insider" was on the purchasing side of the proposed transaction.

Based upon the representations, the bankruptcy court allowed the sale of property to be consummated. The actual buyer was the Kensington Development Corporation which then sold the shopping center to LRB.

A few months later, the creditor's committee filed a complaint in the bankruptcy court alleging that James Flanagan did possess an ownership interest as the purchaser because he was a principal in LRB. The committee requested a "revesting" of title to the property. A lis pendens was filed in connection with the complaint.

Subsequently, Kensington Development and LRB commenced the instant action, alleging, *inter alia,* that the filing of the lis pendens had created a cloud upon title causing LRB to lose sales of certain limited partnership interests; they also alleged that the committee acted without regard for the truth and with malice toward Kensington and LRB.

The bankruptcy court eventually dismissed the committee's adversary complaint and ordered it to release the notice of lis pendens on the ground that the court lacked jurisdiction. The state circuit court, here, granted summary judgment for the committee, holding that its action in filing the lis pendens was absolutely privileged.

In deciding a motion for summary judgment, the initial question is the same as that on a sec. 802.06(2), Stats., motion to dismiss the complaint for failure to state a claim upon which relief can be granted—namely, whether the complaint states a claim upon

which relief can be granted. *Prah v. Maretti,* 108 Wis. 2d 223, 228, 321 N.W.2d 182, 185 (1982). If the complaint states a claim and the pleadings show the existence of factual issues, the court then examines the affidavits and other proof and determines whether there are disputed material facts that entitle the non-moving party to a trial. *Id.* at 228, 321 N.W.2d at 185–86.

Although the committee does not point to any particular facet of this standard of review, it claims that the facts presented in the pleadings conclusively show plaintiffs' action as having no merit as a matter of law. We conclude that the committee was asking the trial court, and is asking us, to hold that the complaint does not state a claim upon which relief can be granted.

In the complaint, plaintiffs alleged that the adversary complaint and lis pendens were filed "without justification" because the property in issue had been sold for value at the sheriff's sale, the sale having been confirmed by the circuit court and approved by the bankruptcy judge. The complaint alleged that the committee acted without truth, and with malice, and created a cloud upon title. Liberally construed, the complaint alleges an action for slander of title.

The committee appears to argue that the complaint does not state a claim for relief because the committee's actions were absolutely privileged. This raises a question of law which we decide without deference to the trial court. *First Nat'l Bank v. Dickinson,* 103 Wis. 2d 428, 433, 308 N.W.2d 910, 912 (Ct. App. 1981).

The issue joined exhibits a tension existing between two well-embedded tenets of common law. On

the one hand, parties to judicial proceedings have enjoyed an absolute privilege to make allegedly defamatory statements as long as the defamatory matter is "connected" to the proceedings. *Jennings v. Paine,* 4 Wis. 372 (*358) (1855). The privilege is based upon the public interest in according to all persons the utmost freedom of speech in courts of justice uninfluenced by the possibility of being brought to account in an action for defamation. *See Stewart v. Fahey,* 481 P.2d 519, 520–21 (Ariz. Ct. App. 1971). The interest in this freedom from fear of liability is especially strong when one is required by law to do an act. *See* Restatement (Second) of Torts sec. 592A comment a (1977).

The committee stands behind this facet of common law, claiming that its adversary complaint was a judicial proceeding, as was the accompanying lis pendens. The committee observes further that sec. 840.10, Stats., requires the filing of a lis pendens in any action involving real property as a means to put those with no knowledge of the action on legal notice of pending litigation. *Belleville State Bank v. Steele,* 117 Wis. 2d 563, 575, 345 N.W.2d 405, 411 (1984).

The committee concludes that its action in filing the lis pendens is protected by the longstanding rules of absolute privilege because the lis pendens refers to the subject of the judicial inquiry and is a required act.

On the other hand, common law has long recognized the tort named slander of title. The earliest cases, arising shortly before 1600 A.D., involved oral aspersions cast upon plaintiff's ownership of land, preventing the leasing or selling of it. W. Prosser, *Law of Torts* sec. 128, at 915 (4th ed. 1971). The tort is part of a considerable body of law relating to the interference with commercial or economic relations. *Id.* It is

not, therefore, realistically a branch of general libel or slander. *Id.* at 917.

Under a slander of title claim, an individual must show a publication which: (1) results in an injurious falsehood or disparagement of property and includes matters derogatory to the plaintiff's title or business in general, calculated to prevent others from dealing with the plaintiff or to interfere with his relations with others to his disadvantage; (2) has been communicated to a third person; (3) plays a material or substantial part in inducing others not to deal with the plaintiff, and (4) results in special damage. *Id.* at 919–20.

This common law has been codified by sec. 706.13, Stats. *Schlytter v. Lesperance,* 62 Wis. 2d 661, 666–67, 215 N.W.2d 552, 554–55 (1974). The statute reads as follows:

**Slander of title.** (1)   In addition to any criminal penalty or civil remedy provided by law, any person who submits for filing, docketing or recording, any lien, claim of lien, lis pendens, writ of attachment or any other instrument relating to the title in real or personal property, knowing the contents or any part of the contents to be false, sham or frivolous, is liable in tort to any person interested in the property whose title is thereby impaired, for punitive damages of $1,000 plus any actual damages caused thereby.

(2)   This section applies to any person who causes another person to act in the manner specified in sub. (1).

(3)   This section does not apply to a register of deeds or other government employe who acts in the course of his or her official duties and files,

165

dockets or records any instrument relating to title on behalf of another person.

The elements are largely the same as at common law. A knowingly false, sham or frivolous claim of lien or any other instrument relating to real or personal property filed, documented or recorded (so that, by its very nature, it gives notice to third persons), which impairs title, is actionable in damages.

In this clash between the absolute privilege rule and the slander of title statute, we observe that it would be virtually impossible to assert a claim under sec. 706.13, Stats., if all communications in judicial proceedings relating to property were absolutely privileged.

The committee's protestations to the contrary are unpersuasive. The committee attempts to relieve the tension between the absolute privilege rule and the statute by carving out two hypothetical situations where, allegedly, the statute could exist side by side with the absolute privilege rule.

It asserts first that if the lis pendens includes slanderous material within the four corners of the document which is *irrelevant* to the pending lawsuit, then it is frivolous material and not protected by absolute privilege. The difficulty with this hypothetical is that it demonstrates a misunderstanding of the nature of absolute privilege. It is not necessary that the defamatory matter be relevant or material to any issue before the court, as the committee suggests. Rather, if a party is to be entitled to an absolute privilege, then the material will be protected even if it is irrelevant. As long as the defamatory matter is not *entirely disconnected* with the litigation, the protection will continue. Restatement (Second) of Torts sec.

166

587 comment c (1977). The party is not answerable for defamatory matter volunteered or included by way of surplusage in the pleadings if it has any bearing upon the subject matter of the litigation. *Id.*

Thus, when a person places slanderous material within the four corners of a document submitted for filing or recording, an absolute privilege would protect that action and sec. 706.13, Stats., could not co-exist, in this instance, with absolute privilege.

The committee's second hypothetical presents the scenario where the lis pendens is filed but there is no underlying judicial proceeding. The committee asserts that the absolute privilege would not apply in this instance and thus sec. 706.13, Stats., and the absolute privilege rule can exist together. As correctly noted by the plaintiffs, however, this proves too much. A lis pendens filed without a lawsuit pending is inoperative and does not affect or encumber title to property. *Sherman v. Bemis,* 58 Wis. 343, 347, 17 N.W. 8, 10 (1883). Title would not be impaired under sec. 706.13. We conclude that sec. 706.13 cannot be meant to apply only to this rare situation where a lis pendens is filed without the existence of an underlying lawsuit. We are not induced to accept the committee's assertions; the tension between sec. 706.13 and absolute privilege remains.

We determine that sec. 706.13, Stats., would not be enforceable were we to give effect to the absolute privilege rule. In cases of conflict between legislation and the common law, legislation will govern because it is the latest expression of the law. 2A N. Singer, *Sutherland Statutory Construction* sec. 50.01 (rev. 4th ed. 1984). We therefore hold that when a lawsuit is commenced pursuant to sec. 706.13, the absolute

privilege rule does not apply. Rather, a conditional privilege rule applies. We cite Prosser in support:

> In general, it may be said that injurious falsehood, which is a tort that never has been greatly favored by the law, is subject to all of the privileges recognized both in cases of personal defamation and in those of other types of interference with economic advantage. ... As in defamation, however, the privilege in such cases is a qualified or conditional one, and is lost if the publication is excessive, or if the defendant knows that his statement is false, or is actuated by an improper motive.

Prosser, *supra,* at 924 (footnotes omitted). The supreme court has written on conditional privilege as follows:

> The Restatement of Torts states that an occasion is conditionally privileged if the communication "affects a sufficiently important interest of the publisher" and "the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest." In the area of conditional privileges, the Restatement of Torts has been approved of and adopted by this court. However a conditional privilege is subject to the limitation that persons making the statements have reasonable grounds for believing the truth of the statements made and that the statements made are reasonably calculated to accomplish the privileged purpose.

*Converters Equip. Corp. v. Condes Corp.,* 80 Wis. 2d 257, 264–65, 258 N.W.2d 712, 715–16 (1977) (footnotes omitted). We conclude that a like analysis is appropriate with cases arising under sec. 706.13. If the

pleading affects a sufficiently important interest of the person asserting an action affecting title, and those learning of the action will be subserved thereby, then the pleading will be protected. This protection is subject, however, to two caveats: (1) the pleader must have a reasonable ground for believing the truth of the pleading, and (2) the pleading must be reasonably calculated to accomplish the privileged purpose.

In the instant action, an adversary complaint was filed in the bankruptcy court. A lis pendens was filed with the Waukesha county register of deeds. To determine whether a conditional privilege applies in an action involving a lis pendens, it will be necessary to focus upon the underlying cause of action. This is because a lis pendens is nothing more than a statutorily authorized notice of pleadings; it has no separate existence of its own apart from the litigation of which it serves notice. *Procacci v. Zacco,* 402 So. 2d 425, 427 (Fla. Dist. Ct. App. 1981).

Perhaps in anticipation of our holding, the committee claims that the matters asserted in the adversary complaint were true and the adversary complaint, with its attendant lis pendens, was necessary to accomplish the committee's stated purpose—to prevent fraud upon the bankruptcy court and the unsecured creditors.

We will not reach that issue now. Where the applicable law is unclear or the record has not been fully developed, then the court should await the full development in the trial court. *See Schlosser v. Allis-Chalmers Corp.,* 86 Wis. 2d 226, 244, 271 N.W.2d 879, 888 (1978).

Our reading of the record does not give us a clear enough foundation to decide whether the committee's

action was necessary or even allowed under present bankruptcy law.

*By the Court.*—Order reversed and cause remanded for further proceedings.