STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         CIVIL ACTION
                                                  DOCKET NO: CV-09-93
                                                  JON YOR- 7/12/2012


SEAGULL CONDOMINIUM
ASSOCIATION,

            Plaintiff/Counterclaim
            Defendant

      v.

FIRST COAST REALTY &
DEVELOPMENT, LLC

            Defendant/Counterclaim
            Plaintiff

and

ST. JEAN'S CREDIT UNION and
MARGARET O'NEIL

            Parties-in-Interest


## ORDER ON PLAINTIFF/COUNTERCLAIM DEFENDANT'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the court is the Plaintiff/Counterclaim Defendant 's Motion for Partial

Summary Judgment on Counts V (tortious interference), VI (slander of title), and VII

(defamation) of the Defendant/Counterclaim Plaintiff's Counterclaim. The motion

has been fully briefed and oral argument was held on June 6, 2012.

### BACKGROUND

Seagull Condominiums is a condominium complex located in Wells, Maine

and created through an August 2003 condominium declaration. (Pl. SMF ¶¶ 3, 5.)

The interest of the original declarant, Broderick Associates, was purchased by the

1

Wells Group, LLC. (Pl. SMF ¶¶5, 7.) First Coast Realty & Development, LLC ("First Coast"), solely owned by Harry Zea, later acquired Wells Group, LLC and is now the "Declarant" of the Seagull Condominium. (Pl. SMF ¶¶ 2, 11; Def. Add'l SMF ¶ 1.) The Seagull Condominium Association ("Seagull" or the "Association") is the ownership association governing the Seagull Condominium complex. (Pl. SMF ¶ 4.) Management decisions are made by the Board, which is comprised on individual owners.

*The Rental Program*

Seagull operates a rental program for the condominium units. Under the Town of Wells Zoning Code, it is required to make the units available for rent by the traveling public and is required to maintain an office on the premises to facilitate this. (Pl. Resp. to Def. Add'l SMF ¶ 16.) The Association takes a 25 to 28 percent fee of the rental price as an administrative fee regardless of whether the unit owner rented the unit or the Association rented the unit. (Def. Add'l SMF ¶¶ 11, 16.) This program has been operating since the time when the Wells Group LLC as the "declarant."

In March 2009, one Association Board member, Ms. Higgins, raised questions as to the lawfulness of the rental program in an email to other Board members. (Def. Add'l SMF ¶ 17.) Her analysis was based on the condominium Declaration and Bylaws. (Def. Add'l SMF ¶¶ 18-19.) Two other board members, Mr. Zaharchuk and Mr. Roth, met with Ms. Higgins after she sent this email and attempted to "convince" her that her interpretation was incorrect. (*See* Def. Add'l SMF ¶¶ 20-28.) The Association has apparently continued to operate the rental program after this discussion.

2

*The "First Packet" and "Lender Beware" Documents*

In early January 2009, Linda Starr and Laurie Sprague, both owners of units in the Association, received a packet of materials containing approximately four pages of public documents. (Pl. SMF ¶¶ 27-29.) These documents contained references to Mr. Zea and his wife, Alison. (Pl. SMF ¶ 30; Def. Reply ¶ 30.) Ms. Starr contacted Mr. Zea to report that she had received these documents. (Pl. SMF ¶ 31.) Mr. Zea stated that he did not know who sent the materials and that he had no reason to believe that it was a Board member. (Pl. SMF ¶ 32.) Ms. Starr stated that, although she is not a handwriting expert, she thought that the writing on the envelope looked like that of Ms. Gagliastre, another unit owner and former Board member. (Pl. SMF ¶¶ 33-34.) Ms. Gagliastre testified that she did not know who sent the packet. (Pl. SMF ¶ 36.)

A some point after April 10, 2009, a packet of documents containing a cover sheet with the words "Lender Beware" was allegedly sent to area lenders by the Association to hinder First Coast's ability to obtain financing. (Pl. SMF ¶¶ 39-40.) The documents contained in this packet are also public records but related to First Coast Realty and Development Corp., not LLC, a separate and distinct entity than the defendant in this case. (Def. Add'l SMF ¶ 75.) Only one individual, Mr. Stone, President of the Bank of New England, testified to having received documents similar to those contained in the "Lender Beware" packet. (Def. Reply. SMF ¶ 60.) Mr. Stone testified that he thought it would have been inappropriate to take notice of these documents and he discarded the materials. (Pl. SMF ¶ 60 and Reply ¶ 60.) The contents of the loan files of other lending institutions did not reveal any of these documents and Mr. McCarren, also of Bank of New England, stated that he was not

3

aware of the decision to deny extending credit to First Coast to have been made in reliance on these documents. (Pl. SMF ¶¶ 57, 60, 61.) First Coast was denied a renewal of his credit by Bank of New England and was also denied credit from Sanford Institute for Savings. (Pl. SMF ¶¶ 55, 59.)

The Association claims to have no knowledge of who created or sent either packet of documents. (Pl. SMF ¶ 45.) It also claims to have no role in authorizing such documents to be sent. (Pl. SMF ¶ 46.) First Coast alleges that Mr. Zaharchuk sent the "Lender Beware" materials, on behalf of the Association, based on a conversation Ms. Gagliastre had with Mr. Zaharchuk in which she stated that she believed he had sent the documents and he did not deny sending them but did claim that the documents did not exist. (Def. Add'l SMF ¶¶ 67-68.)

*Purchase and Sale Agreement with the Iannaccheros*

In November 2009, First Coast entered into a purchase and sale agreement with Antonio Iannacchero and Ruby Allen (the "Iannaccheros") for the purchase of Unit #1 at Seagull, an undisputedly declared unit. (Def. Add'l SMF ¶ 76.) The Iannaccheros ultimately did not purchase the unit in part because they (apparently as advised by their attorney) did not believe that the Association Board had the authority to impose the fees associated with the rental program based on the language of the declaration and lack of authority from the condominium members. (Def. Add'l SMF ¶ 81.) They were also concerned about the practice of imputing rental income to the owner if a relative stayed in the unit. (Def. Add'l SMF ¶ 78.) Their agent states that the Association Board assured them that an exception was made for family members even though that practice contradicted the rules and that the rules were to be changed in the near future to reflect that practice. (Def. Add'l

4

SMF ¶ 79.) Despite those assurances, the rule was not changed. (Def. Add'l SMF ¶ 80.)[1]

## Procedural History

This action began with Seagull's filing of its Complaint on or about September 15, 2009 through which it sought recovery of back assessments on two declared condominium units. (Pl. SMF ¶¶ 12, 13.) First Coast filed a Counterclaim against Seagull alleging five causes of action involving those and other condominium units. (Pl. SMF ¶ 17.) In response, Seagull filed an Amended Complaint that included all of the outstanding issues it believed existed between the parties and filed a Notice of *Lis Pendens*, referencing the Amended Complaint, in the York County Registry of Deeds. (Pl. SMF ¶¶ 18-22.) First Coast then amended its Counterclaim to add additional causes of action, including slander of title, tortious interference, and defamation, which are the subject of this partial motion for summary judgment. (Pl. SMF ¶¶ 23-25.)

---

[1] The Plaintiff objects to most of these statements of material fact on the grounds that the supporting affidavits of Kugler and Holder are not based on personal knowledge and the supporting statements are hearsay. Both affidavits use jurats that contain the statement: "the information contained therein is based upon her personal knowledge, information and belief; and so far as upon information and belief, believes such information to be true." M.R. Civ. P. 56(e) requires that supporting affidavits be made based on personal knowledge. Although the jurats do not confirm that the affidavits are conforming, the Law Court has instructed that. ["i]f it is apparent from the content of an affidavit that the affiant had personal knowledge of the facts averred, the court will consider the affidavit and the documents attached to it." *Peoples Heritage Savings Bank v. Pease*, 2002 ME 82, ¶25, 797 A.2d 1270, 1276, *citing Casco Northern Bank, N.A. v. Estate of Grosse*, 657 A.2d 778, 781 (Me. 1995). Kugler, as the attorney for the purchase and sale, and Holder, as the real estate broker for the deal, have both demonstrated that they were intimately involved in the transaction and several of the statements contained in the affidavit refer to their own personal interactions with the Association. The court has considered these affidavits but only to the extent that it is apparent that they were made based on the personal knowledge of the affiant. With respect to the hearsay objection, those portions of the affidavit based on statements by the Iannaccheros are stricken, as they are impermissible hearsay. However, those portions based on statements made by representatives of the Association (e.g. Holder Aff. ¶¶ 10-13) are statements by a party opponent and are not hearsay.

5

These three tort claims are based on three factual scenarios: the filing of the Notice of *Lis Pendens* in reference to this action, the sending of two packets of documents disparaging First Coast's credit worthiness to various recipients, including lenders with whom First Coast conducted business, and Seagull's operation of the rental program. (Pl. SMF 26; Def. Opp. SMF ¶ 26.)

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (*quoting Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178). "Even when one party's version of the facts appears more credible and persuasive to the court," summary judgment is inappropriate because the court may not weigh the evidence presented. *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 17, 917 A.2d 123. In considering a motion for summary judgment, the court should view the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702.

### A.    Slander of Title

"'[S]lander of title' is a form of the tort of injurious falsehood that protects a person's property interest against words or conduct which bring or tend to bring the validity of that interest into question. To prove slander of title a claimant must

6

prove (1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me. 1996).

First Coast's allegation of slander of title stems from three actions: (1) Seagull's filing of a *lis pendens*, (2) Seagull's "disparagement of its title rights in its real estate at Seagull by virtue of SCA's rental regime through which it requires unit owners to rent their units through SCA," and (3) Seagull's statements to potential purchasers that it is eager to initiate lawsuits to resolve disputes. (First Coast Mem. 12-14.) Seagull defends against the first allegation by arguing that a *lis pendens* is absolutely privileged and against the other allegations on the grounds that these statements do not constitute a statement against title.

### 1. Absolute Privilege

Seagull partially rests its motion on the grounds that the filing of a *lis pendens* is equivalent to filing a complaint in court and is therefore absolutely privileged under section 587 of the Restatement (Second) of Torts. *See Raymond v. Lyden*, 1999 ME 59, ¶ 6, 728 A.2d 124. This sections states,

> [a] party to a private litigation...is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Restatement 2d Torts § 587 (1977). The Restatement also applies the absolute privilege to the tort of "injurious falsehood."[2] *Id.* at § 635.

---

[2] Slander of title is a tort encompassed within the term "injurious falsehood." *See* Restatement 2d Torts § 624 ("The rules on liability for the publication of an injurious

7

The Law Court has not ruled on the applicability of the absolute privilege to the filing of a *lis pendens*. A Maine Superior Court decision, authored by Justice Lipez in 1992, found that the filing of a *lis pendens* is absolutely privileged because (1) the recording is in effect a republication of the pleadings in an action, (2) thus, the *lis pendens* is incidental to the underlying action and does not exist apart from it, and (3) a publication made in any judicial proceeding is absolutely privileged. *Street & Company, Inc. v. Carr*, 1992 Me. Super LEXIS 173, * 4-6 (July 15, 1992).

This question has been decided in several other jurisdictions. The majority of decisions recognize that the absolute privilege afforded in litigation applies to the filing of a *lis pendens*, putting the world on notice of those claims, as long as the subject property is the subject of the litigation. *See Ringier America, Inv. v. Enviro-Technics, Ltd.*, 284 Ill.App.3d 1102, 1106-07, 673 N.E.2d 444 (Ill. App. 1996) (and cases cited therein); *Pond Place Partnership v. Poole*, 567 S.E.2d 881 (S.C. App. 2002) (and cases cited therein); *but see Kensington Dev. Corp. v. Israel*, 139 Wis. 2d 159, 407 N.W.2d 269 (Wis. App. 1987) (reconciling conflicting statutory requirements to favor a conditional privilege); *Warren v. Bank of Marion*, 618 F. Supp. 317, 325 (W.D. Va. 1985) (holding that "the filing of a notice of *lis pendens* is more appropriately characterized as a qualifiedly privileged occasion").

The *Street & Company* decision is well-reasoned and applicable to the facts of this case. In the absence of contradictory Maine law and because the filing of the *lis pendens* in this case was related to the underlying judicial proceeding, the act of

---

falsehood stated in § 623A apply to the publication of a false statement disparaging another's property rights in land...that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.")

8

filing the Notice of *Lis Pendens* cannot be a factual basis for First Coast's slander of title action because the "statement" is absolutely privileged.

### 2. Rental Program

First Coast also bases its slander of title action on Seagull's assertion that it has the right to run the "rental program" and thereby dictate the terms on which First Coast and its successors may use its units. (Def. Mem. in Opp. 13.) First Coast also argues that this kind of requirement would cause owners of units to be subject to securities regulations, again restricting the manner in which the units could be sold. *Id.*

First Coast has brought a separate count, not subject to this motion, seeking a declaratory judgment regarding the validity of the rental program. The validity of the program does not go to the question of slander of title. Instead, the question is whether any statements about the existence of the rental program were slanderous to First Coast's title. It is not entirely clear to the court what "statements" First Coast is claiming are the basis for the slander of title. Paragraph 38 of the Counterclaim, stating the conduct alleged as the basis for all three torts, suggests that liens have been asserted against First Coast's property because of the rental program and that the program was fraudulently created and arbitrarily operated.

First Coast's claim fails to meet the required elements. The fraudulent creation and arbitrary operation of a rental program are not statements disparaging title. The creation and arbitrary operation of the rental program cannot be the source of damage because both existed when the property was acquired. While it may ultimately be decided that the Association did not have the authority to create and maintain a rental program, the program does in fact exist and the Seagull

9

Condominium units are currently subjected to it. First Coast has not presented any evidence to the court that a lien or other claim for money has been asserted against First Coast's units because of the rental program.[3]

### 3. Willingness to Litigate

The basis for this argument is that the Association Board has allegedly acted inconsistently with its own regulations and stated intentions for changing those regulations. That is, it has arbitrarily enforced certain regulations and, in communicating that to potential purchasers and lenders, has alienated potential purchasers and lenders from purchasing First Coast's units. (Def. Mem. in Opp. 14.)

Even assuming that these statements are true, nothing that First Coast has argued here constitutes slander of title. First, none of the statements are related to the title that First Coast holds or held in the units at issue. Second, there is no suggestion that Seagull's statements about its willingness to litigate or belief that it can alter rules and regulations are false.

## B.     Tortious Interference with an Economic Advantage

First Coast's claim for tortious interference with an economic advantage arises from Mr. Zaharchuk's alleged mailing of a packet of materials to local area bankers disparaging First Coast and Mr. Zea's credit worthiness. First Coast also claims that the Association's actions in asserting its right to run the mandatory rental program and asserting its authority to alter the rules of the program at will tortiuously interfered with First Coast's sale of a unit to the Iannaccheros.

"Tortious interference with a prospective economic advantage requires a

---

[3] The liens asserted appear to all be based on back assessments that are or were alleged to be due on the units. (*See e.g.* Def. Resp. to Pl. SMF ¶ 18.)

10

plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104. Interference by intimidation typically requires proof of unlawful coercion or extortion. It can also be proven through evidence that the defendant convinced a third party to breach a contract with the plaintiff by convincing the party that the only way to obtain a benefit from the defendant is to breach the contract. *Currie v. Ind. Security, Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400. Interference by fraud requires proof that (1) the defendant made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relied on the representation as true and acts upon it to the damage of the plaintiff. *Rutland*, 2002 ME 98 at ¶ 14.

### 1.   Relationship with Lenders

First Coast has failed to generate a genuine issue of material fact for trial with regard to the second element of the claim for tortious interference by failing to demonstrate that it was the Association who interfered with the contract and by failing to show any intimidation or fraud.

There is no competent evidence that the Association sent any documents to any lenders that disparaged First Coast's credit worthiness. First Coast relies entirely on the affidavit of Linda Gagliastre to support its claim that Mr. Zaharchuk, a member of the Association Board at all relevant times and currently the President, sent the "Lender Beware" packet of materials and that he did so on behalf of the

11

Association. (SMF[4] ¶¶ 32, 36, 37, 43, 45-52.) Not only does Linda Gagliastre's affidavit not affirmatively state that Mr. Zaharchuk confirmed that he sent the materials on behalf of the Association or even that he sent the materials at all, her affidavit testimony consists of inadmissible hearsay.[5]

Mr. Zaharchuk has denied sending these materials. (Pl. Reply SMF ¶ 45.) First Coast has not put forward any facts showing that the Association Board permitted, sanctioned, or condoned the sending of these materials (SMF ¶¶ 46-48) or that the mailing of these documents could be considered within the scope of duties of an Association Board member. Furthermore, Mr. Stone, the only person who has testified to receiving these documents, stated that they were anonymous. (Def. Add'l SMF ¶ 62; Pl Reply SMF ¶ 62.) Thus, even had Mr. Zaharchuk sent these documents, there is no basis on which his actions could be imputed to the Board under agency theory.

---

[4] The term "SMF" is meant to include the original statement of fact, the defendant's response, and the plaintiff's reply.

[5] Seagull argues that the Gagliastre affidavit should not be considered because it contradicts Ms. Gagliastre's previously sworn testimony. It cites to *Zip Lube, Inc. v. Coastal Savings Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, for the rule of law that an interested party may not create a genuine issue of material fact by contradicting previously sworn testimony without a satisfactory explanation. While the court agrees that this affidavit is self-serving to First Coast, Ms. Gagliastre is not an "interested party" for the purposes of this rule. Although the coverage of this rule has been extended beyond the named party in a matter, *see Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶¶ 31-33, 980 A.2d 1270, there is no evidence that Ms. Gagliastre is affiliated in any way with First Coast or Mr. Zea or that she was involved in any way in the interactions between First Coast and the Seagull Board during the relevant times.

First Coast argues that Ms. Gagliastre's affidavit is not hearsay because Mr. Zaharchuk is a member of the Association Board and his statements (or adopted statements) are non-hearsay statements of a party opponent. *See* M.R. Evid. 801(d)(2). First, the court does not find that Mr. Zaharchuk adopted Ms. Gagliastre's statement. In fact, it appears that his response was a denial of the mere existence of such documents. Furthermore, it is not clear to the court that in this conversation Mr. Zaharchuk was speaking with Ms. Gagliastre in his capacity as a member of the Board. Unless he was, his statements are not those of the Association and Mr. Zaharchuk is not a party opponent.

There is no evidence that Bank of New England, with which First Coast had a prior relationship, terminated that relationship based on the packets. (Pl. SMF ¶¶ 54-62; Def. Add'l SMF ¶¶ 62-65, 73, 74, 72 (confirming that, although Mr. Stone of Bank of New England testified that he received some documents in the mail, he thought it was improper to consider them and further confirming that there is no evidence of when any documents were received by the banks in relation to the time when First Coast was denied further credit).) And there is no evidence that Sanford Institution of Savings, with which First Coast at best had an anticipated benefit, ever received or was aware of these documents. (Pl. SMF ¶¶ 54, 55, 57.) Instead, the Sanford Institution of Savings stated that its decision to deny First Coast credit was based on the current economic conditions and the speculative nature of the repayment plan. (Pl. SMF ¶ 56.)

There is no evidence that any mailing of these documents constituted fraud or intimidation. There are no allegations that sending the documents was coercive or an attempt at extortion. First Coast has not identified any advantage the banks may have acquired from Seagull for not extending credit that could be construed as intimidation under *Currie*.

The parties have argued about the truth or falsity of the documents under a fraud theory. First Coast does not appear to dispute the authenticity of the documents and that they are true copies of public records. Instead, it argues that the understanding of the only person who has admitted receiving these documents was that they related to Mr. Zea and First Coast Realty & Development, LLC despite the fact that the documents refer to First Coast Realty & Development, Corp. (Def. Mem. in Opp. 18.) This argument is based on the law of defamation in which the

13

defamatory nature of a statement is determined by the reasonable understanding of the recipient of the publication, not by the publisher. *Chapman v. Gannett*, 132 Me. 389, 391, 171 A. 397, 398 (1934). This idea is inapplicable to tortious interference with an economic advantage through fraud. The question to be asked when analyzing whether a statement was a "false representation of a material fact" is whether it is false on its face. The public records here are not false representations of fact. There is no assertion that the documents apply to First Coast, LLC and Mr. Stone's understanding as such was not made in reliance on any statement by the Association.

### 2. Interaction with Prospective Purchasers

First Coast also fails to generate a genuine issue of material fact to survive summary judgment on its tortious interference claim with regard to the contractual relationship that it had with the Iannaccheros. Although the prospective economic advantage between First Coast and the Iannaccheros is clear, any interference on the part of the Association has not been shown to be by intimidation or fraud. Regardless of whatever statements were made to the Iannaccheros or other prospective purchasers, there is no evidence that Seagull made false statements or made statements with knowledge or reckless disregard to the falsity of those statements. The Board believed it had the authority and the obligation to operate the rental program in the manner in which it was operated and that it had the authority to change the rules or disregard the rules. Whether or not those statements are correct, it is clear that the board members believed that they were acting within their authority.

14

There is evidence that one board member, Ms. Higgins, believed that the rental program was illegal and that she discussed her interpretation of the condominium documents with Mr. Roth and Mr. Zaharchuk. (Def. Add'l SMF ¶¶ 17-28; Pl. Resp. to Def. Add'l SMF ¶¶ 17-28.) Ms. Higgins questioning the validity of the rental program does not alter the fact that, collectively, the Board believed that it was authorized to operate the rental program. Furthermore, even if the Board's statements regarding its right to maintain the rental program and to amend rules at will were considered to be false statements of material facts made with knowledge or reckless disregard of their falsity, there is no evidence that the Association made such statements for the purpose of inducing the Iannaccheros to break off the purchase and sale agreement.

Also, the evidence put forth by First Coast indicates that the Iannaccheros did not rely on the truth of the statements by the Board. That is, First Coast states that the Iannaccheros and their attorney do not believe that the Association had the right to maintain the rental program or to change the condominium rules at will, despite the Association's assertion that it did. (Def. Add'l SMF ¶ 81.) The last element in proving intentional interference through fraud requires justifiable reliance on the representation. A buyer's decision to terminate a purchase agreement on the grounds that the condominium association appears to be acting outside its authorized capacity may very well cause damage the owner of a unit but the termination should not necessarily be deemed a tortious interference.

C.    Defamation

To prove a claim for defamation, a party must establish 1) a false statement concerning another, 2) published to a third party without privilege, 3) with fault

15

amounting to at least negligence, and 4) damage. *Morgan v. Kooistra*, 2008 ME 26, ¶ 26, 941 A.2d 447.

The Defendant points to the same three core facts as the basis for its claim for defamation. As discussed above, the filing of a *lis pendens* on property that is the subject of litigation is absolutely privileged under Maine law and cannot be the basis for a defamation claim. Also, as discussed above, there is no evidence establishing that any member of the Association Board sent the "Lender Beware Packet" nor that it was sent on behalf of the Association. That is, First Coast has failed to prove that the Association is the party responsible for publishing these materials.

The same is true with respect to the "First Packet." The evidence presented is conflicting: Mr. Zea testified that he does not know who sent the materials; Ms. Starr testified that she believed Ms. Gagliastre sent them because the handwriting appeared to be hers; and Ms. Gagliastre testified at her deposition that she had no opinion as to who sent them but had "suspicions." (Pl. SMF ¶¶ 32, 34, 36.) Regardless, First Coast has not asserted that the First Packet was authorized by or sent on behalf of the defendant Association.

As for the Association's creation and operation of the rental program, there is no way to interpret the existence of and the Association's asserted right to enforce the rental program as false statement concerning First Coast or Mr. Zea. Thus, it cannot be defamatory.

**The entry is:**

Plaintiff/Counterclaim Defendant's Motion for Partial Summary Judgment is GRANTED. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

16

DATE: 7/12/12

_____
John H. O'Neil, Jr.
Justice, Superior Court


7/12/12 Also due to this order, the Motion to compell is denied. The elimination of these claims renders the Discovery sought to be not reasonably calculated to produce admissible evidence on surviving claims.
J.O.

17

ATTORNEYS FOR PLAINTIFF:
THOMAS MCKEON
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME  04112-9545

CHRISTIAN CHANDLER
SIDNEY THAXTER
CURTIS THAXTER LLC
PO BOX 7320
PORTLAND ME  04112-7320

ATTORNEYS FOR DEFENDANT FIRST COAST REALTY & DEVELOPMENT LLC
DAVID GOLDMAN
JONATHAN BROGAN
PAUL F DRISCOLL
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME 04112-4600

ROBERT NEAULT
ROBERT M NEAULT & ASSOCIATES PA
PO BOX 1575
NAPLES ME  04055

ATTORNEY FOR DEFENDANT TWO LIGHTS FUNDING LLC:
JOHN MCVEIGH
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME  04112

ATTORNEY FOR PARTY-IN-INTERESTS ST JEANS CREDIT UNION &
MARGARET O'NEIL:
ANDREW SPARKS
DRUMMOND & DRUMMOND
ONE MONUMENT WAY
PORTLAND ME  04101

ATTORNEY FOR PARTY-IN-INTEREST PD INDUSTRIES INC:
F DAVID WALKER
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
PO BOX 4726
PORTLAND ME  04112-4726